# Richmond

LINDSEY L. SCHOOLS v. A. J. WALKER AND W. T. HOLT, INC., A CORPORATION, ETC.

April 26, 1948.

Record No. 3272.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Dabney Overton* and *Chas. H. Ryland*, for the plaintiff in error.

*A. Fleet Dillard* and *M. Wallace Moncure, Jr.*, for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

A. J. Walker, plaintiff below, lived in a house located in the southeastern corner of the intersection of State Highway No. 3 and a secondary road known as the Lara road, in the village of Farnham, Richmond county. This house was damaged as the result of a collision between a gasoline truck owned by W. T. Holt, Inc., herein referred to as Holt, and an automobile owned and operated by Lindsey L. Schools. The Holt truck hit the Schools car broadside on its left, pushed it up a slight slope, caused it to strike Walker's house at two corners and tear down a hedge and fence before it came to rest at the edge of a well in Walker's yard, on the west side of his residence, about 85 feet from the point of collision. The impact shifted the house on its foundation, broke two chimneys and did other damage.

Walker brought his action against Holt and Schools for his damage, charging that it was caused by their concurring negligence. The jury trying the case returned a verdict for $2,000 against Holt, but found in favor of Schools. On

motion of Holt (permitted under the decisions in *Norfolk, etc., R. Co.* v. *Parker,* 152 Va. 484, 147 S. E. 461, and *Richmond Coca-Cola Bottling Works* v. *Andrews,* 173 Va. 240, 3 S. E. (2d) 419), the trial court set aside the verdict for Schools and entered judgment against both Schools and Holt for the amount of the verdict. To that ruling this writ of error was awarded Schools, whose sole assignment is that the trial court erred in setting aside the verdict in his favor.

At the place of accident, Highway No. 3 runs approximately north and south through Farnham, from Warsaw on the north toward Lancaster and Kilmarnock on the south. Coming south, it is entered from the left, or east, by what is referred to as the Baptist parsonage road; and about 250 feet farther south by the Lara road, also on the left. The accident happened in this latter intersection about two feet from the eastern edge of Route 3 proper and on the part of the intersection within the extended lines of the southern prong of the Lara road.

From the parsonage road there is a curve to the right to the Lara road of about ten degrees at the parsonage road and diminishing to about seven degrees at the Lara road. About 100 feet south of the parsonage road there is a hedge on the right in the Omohundro yard, which extends back from the edge of the road in such manner as to interfere with vision to the south, so that the driver of a car coming south cannot see a car at the Omohundro mailbox, where Schools was just prior to the accident, until he passes this hedge which is about 160 feet from the place of accident.

On the morning of December 30, 1945, about sunrise, Schools, in his automobile, was delivering papers. He testified he came out of the parsonage road to Route 3, stopped there and looked to his right up Route 3, where he could see for over half a mile, and saw nothing approaching; that he then crossed that intersection and drove on down to the Omohundro mailbox and delivered his paper without getting out of his car. That mailbox was located on Schools' right at the west edge of the west shoulder of Route 3 and

about opposite the center of the intersections of the Lara road with Route 3. He expected to go from there to the Walker mailbox, which was across the Lara road intersection at the northeastern corner of the Walker house on the edge of the Lara road. He said that after delivering the Omohundro paper "then I made a left-hand turn, put my hand out and looked behind, and started my car. Nothing in sight. After starting the car across the road I shoved the glass up, and about the time I got across the road that is the last I know. Must have been hit, don't know what else."

It was the Holt truck that hit him—a tractor truck and trailer loaded with 3,700 gallons of gasoline. It was being driven by Holt's agent, Dixson, who testified that although day was breaking he still had all his lights on; that he was going to Kilmarnock and driving about 35 miles an hour when he came to Farnham; that he slowed up for the curve, and then "I saw a parked car down there. It was in motion, or moving, and he cut across the road from one mailbox, cut across to the store, and I showered down on my brakes, and he just kept coming across the road, and I just cut to the left to avoid the accident, and I hit him on the side of his door."

When Dixson cut to the left he crossed with his left wheels the double white line in the center of Route 3 about 120 feet from the point of collision.

Dixson testified that he first saw Schools when he was 120 feet away from him and that Schools was then moving a little bit, just pulling off on an angle to his left, heading toward Kilmarnock. "My notion is (was) he was going straight ahead, instead of that he came across the road."

As stated, the verdict against Holt was approved and judgment was entered thereon, which has become final. The negligence of Holt's driver as a proximate cause of the collision has, therefore, been conclusively established and is not now in issue. The question for decision now is whether the judgment setting aside the verdict in favor of Schools was proper.

The trial court held that under the evidence, as a matter of law, Schools was guilty of several acts of negligence which were a proximate cause of the accident and but for which the accident would not have happened. The soundness of that conclusion is to be tested by principles that are well settled.

■■ A verdict which has been disapproved by the trial judge is not entitled to the same weight as one that has been approved by him. *Clark* v. *Parker*, 161 Va. 480, 486, 171 S. E. 600. He has also seen the witnesses and heard them testify and the power that is given him to set aside a verdict as contrary to the evidence necessarily means that he must, to some extent at least, pass upon the weight of the evidence. But this does not mean that he can set aside a verdict merely because if on the jury he would have found a different verdict. He must be satisfied from the evidence adduced that there was no evidence to support the verdict or that the verdict was plainly contrary to the evidence. *Ricketts* v. *McCrory Co.*, 138 Va. 548, 560, 121 S. E. 916; *Edgerton* v. *Norfolk So. Bus Corp.*, *post*, p. 642, 47 S. E. (2d) 409.

■ If there was credible evidence sufficient to support the finding of the jury, such finding cannot be disturbed by the trial court or by this court. *Atlantic Greyhound Corp.* v. *Shelton*, 184 Va. 684, 692, 36 S. E. (2d) 625.

From the testimony of Schools himself and from evidence about which there is no dispute, including the map filed as Plaintiff's Exhibit No. 1, we think it is clear that Schools was, as a matter of law, guilty of negligence, which was a proximate cause of the collision. His testimony, of course, is not to be pinned down to isolated statements that might convict him of negligence, but his conduct is to be tested by his evidence as a whole. He is not to be judged by his conclusions or opinions, but by his statements of fact as developed by examination and cross-examination.

■ In starting from the Omohundro mailbox to the Walker mailbox, Schools made a left turn across Route 3. In doing so it was his duty to use reasonable care under the

circumstances to see that such movement could be made in safety. Code, section 2154(122)(a); *Smith* v. *Clark, ante,* p. 181, 46 S. E. (2d) 21, 25.

Schools testified that the weather that morning was a little hazy, kind of a thin mist, but nothing to obstruct his view, that he could see; that when he was parked at the Omohundro mailbox his two right wheels were off the hard surface and that his car was standing parallel with the road—Route 3. He testified, as quoted, that he put his hand out "and looked *behind,* and started my car. Nothing in sight."

He was asked where he was when he looked and he said "I was in motion. I don't say where, but I was in motion." Dixson said he was in motion as if he was going on down the road. Schools testified that he neither saw nor heard the Holt truck and did not know what hit him. He was asked, "You weren't looking, were you?" He replied, "I suppose I looked and drove across the road and was looking where I was going." "Q. You mean to say you didn't look at all after you put your car in motion? A. I wouldn't like to say directly, but—I wasn't following the course altogether, I was watching coming up the road and across the road."

Looking across the road he could see into the Lara road, against which he was protected by a stop sign; and his own witness, Mr. Omohundro, testified that he could see three times as far to his right as to his left, and that in coming from his premises out on Route 3 near his mailbox he knew he was safe from the right and that the danger was from the left. Yet, Schools testified that he drove across the road without looking after he put his car in motion, and when he put his car in motion he was headed south, parallel with the road and with his right wheels off the hard surface of Route 3. "Q. As a matter of fact, Mr. Schools, you didn't look at all did you after you began to put your car in motion? A. I don't imagine I did look behind after I put my car in motion."

Again he was asked whether he looked in the direction

from which the truck came and he replied, "I was looking in the direction where I was going." "Q. But you weren't looking in the direction from which the truck came? A. No, sir."

Schools testified that from his position at the Omohundro mailbox he thought he could see a car coming from Warsaw, to the north, from 150 to 225 feet. His witness, Omohundro, testified that from his driveway he could not see beyond the hedge, which the map shows to be about 160 feet from the mailbox. The traffic officer, Sergeant English, testified that the Holt truck would have to be several feet south of the hedge before Schools could see it. Warner, the engineer who made the map, said that the hedge runs back from the edge of the road "beyond any possibility of vision through it."

It is, therefore, established that Schools' minimum distance of 150 feet was approximately correct. The only direct evidence as to the speed of the Holt truck was 35 miles an hour. At that speed a car coming into view past the hedge would reach the mailbox in a little less than three seconds and, of course, more quickly at a faster speed.

Schools also testified that he could see as far as the parsonage road, but if so that only added to his negligence. His car was struck when it was 22 feet from where he started across the road and he said he was going five or six miles an hour. If the Holt truck was running ten times that fast it would have been past the parsonage road and within the vision of Schools at any time he looked, but he said he did not see it.

It is plain from Schools' own testimony that he did not use reasonable care to see that his turn across the road could be made in safety, and about that the minds of reasonable men should not differ.

Schools also violated two other provisions of the law in making his turn.

Code, section 2154(114) (f) provides: "Wherever a highway is marked with double traffic lines consisting of

two immediately adjacent solid lines, no vehicle shall be driven to the left of such lines."

Section 2154(109) (f) makes it a misdemeanor for any person to "make a left turn without passing to the right of the center of the intersection, whether marked or not;" and section 2154(121) provides that drivers of vehicles, "when turning to the left, shall pass beyond the center of the intersection, and as closely as practicable to the right of the center of such intersection before turning such vehicle to the left."

The Lara road enters into Highway No. 3 in the form of a modified Y, the stem of the letter representing the Lara road. About the center of the triangle is a plot of ground in the center of which is a power pole about a foot in diameter, and also a stop sign. This plot is shown on the map also as a triangle. About three or four feet around the pole is grass and the rest of the area is gravel over hard surface, but is level with the adjacent roads and offers no interference to travel.

The evidence shows that as a result of this situation there were two intersections of the Lara road with Route 3. From the Lara intersection back to the parsonage intersection there were double white lines, but those double lines broke off at each intersection of the Lara road. There were no lines at all at the mouth of each of these intersections, but between the two intersections or outlets of the Lara road there were double white lines.

When Schools was testifying, he drew a line on the map to indicate his course from the Omohundro mailbox to the Walker box. He drew that line across the small triangle within the intersection and about 15 feet to the south of the power pole. Sergeant English testified that this line crossed the two solid white lines between the two outlets of the Lara road. Schools affirmed that as true. He was asked, "So you made one look to your left, and then looked the other way, and went across on that diagonal line and crossed the center double line marking the highway without looking back to your left?" He replied, "I think so."

Schools testified explicitly that in turning at the mailbox he did not go down the road at all, but turned directly across "as short as a man usually can turn." Then followed these questions and answers:

"Q. I have drawn an X on this map as a supposed intersection or crossing of the center line of Route 3 and the center line of the road coming from Lara.

"A. There are two outlets, one here and one there (Indicating on Exhibit 1—Plaintiff).

"Q. I am speaking of the southernmost one.

"A. It is not necessary, there is no reason for me to drive way down there, no, to make that curve."

The trial judge, who, as appears from the record, viewed the scene of the accident along with the jury, instructed the jury that the Lara road intersects Highway No. 3 at two points; that the center of the intersection for an automobile entering from the north, as Schools was driving, was the intersection of the middle lines of the Lara road and Route 3 on the south side of the power pole; and that if Schools did not go down to this southern intersection but crossed the double white lines to go into the Lara road, he was guilty of negligence.

In the case of *Owen* v. *Dixon*, 162 Va. 601, 175 S. E. 41, an instruction was offered which would have told the jury that if the defendants there made a left turn at a place on the highway which was not the meeting point of the medial lines of the intersecting highways, in going into one of the intersecting highways, they were guilty of negligence. We held the instruction was declaratory of the statutory law and should have been given.

In spite of these instructions and the uncontradicted evidence on which they were based, most of it coming from Schools himself and none of it denied by him, the jury returned a verdict in his favor.

Schools argues in his petition that even though these things be true, they were not acts of negligence as to the plaintiff, Walker, because Schools owed no duty to Walker to obey the traffic laws, and where there is no duty there

is no negligence. *Norfolk, etc., R. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *Morris* v. *Dame,* 161 Va. 545, 171. S. E. 662.

These principles have no application to the situation here. Both Schools and Holt owed a duty to Walker not to knock his house off its foundation. If either did so by negligently violating the traffic laws, he would be liable to Walker for the resulting damage. For example, if Holt drove his gasoline truck down the highway at such unlawful speed as to be unable to make the curve and crashed into Walker's house as a result, he would be liable for the resulting damage to Walker. It has been established that Holt was negligent in the operation of his truck. But that negligence would not have resulted in damage to Walker except for the collision with Schools' car. Schools owed Holt the duty of observing the traffic laws. If his failure to observe them was a cause of the collision, then he was negligent as to Holt, and if that negligence combined with the negligence of Holt to cause the damage to Walker, then Schools is liable, along with Holt, to Walker for that damage.

" 'In the law of damages the proximate cause of an injury may in general be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, where, had it not happened, the injury would not have been inflicted, notwithstanding the latter. * * *.

" '* * * It is not essential, therefore, for a plaintiff to show that an act, claimed to have been the proximate cause of a certain result, was the only cause. It is sufficient if it be established that the defendant's act produced or set in motion other agencies, which in turn produced or contributed to the final result. * * *.' " *Chesapeake, etc., R. Co.* v. *Wills,* 111 Va. 32, 37-38, 68 S. E. 395, 397, 32 L. R. A. (N. S.) 280.

"* * * If two defendants are negligent one of them cannot be exonerated by urging and showing the negligence of the other. Where the concurring negligence of the two

produces a single injury and each is its proximate cause they are both liable." *Yonker* v. *Williams*, 169 Va. 294, 299, 192 S. E. 753; 755. *Richmond .Coca-Cola Bottling Works* v. *Andrews, supra.*

If Schools had used reasonable care to see that he could turn across the road with safety, if he had not crossed the double white lines but had driven down Route 3, as required by law, to the point indicated for his entry into the Lara road, then Dixson could have seen the signal the law required him to give, Schools could have seen the oncoming truck and the accident could have been avoided. His failure to do these things was negligence, which concurred with the negligence of Holt to cause the damage to Walker as a natural and probable consequence under the circumstances.

The judgment of the trial court was right and is therefore,

*Affirmed.*