# Richmond

## Fred Von Roy, Jr. v. Furman Whitescarver, John P. Crowe and Flora Crowe.

October 10, 1955.

Record No. 4421.

Present, All the Justices.

The opinion states the case.

*William W. Berry*, for the plaintiff in error.

*Oliver & Padgett* and *Albert O. Burks*, for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Furman Whitescarver instituted this proceeding against Fred Von Roy, Jr., John P. Crowe and Flora Crowe to recover damages to his automobile alleged to have been sustained by the negligent operation of two other automobiles, driven respectively by Von Roy and Flora Crowe. Each of the defendants denied liability. The jury trying the case returned a verdict in favor of Von Roy but against John P. Crowe and Flora Crowe for $1721.00. Mr. and Mrs. Crowe moved the trial court to set aside the verdict as contrary to the law and the evidence. Whereupon Whitescarver moved to set aside the verdict in favor of Von Roy and to enter final judgment for plaintiff against all of the defendants. The trial court overruled the motion made by the defendants, Crowe, sustained the motion of Whitescarver, and entered final judgment in favor of the plaintiff against all of the defendants for the amount of the damages found by the jury. Code of Virginia, § 8-352, *Norfolk etc., R. Co.* v. *Parker*, 152 Va. 484, 147 S. E. 461; *Richmond Coca-Cola Bottling Works* v. *Andrews*, 173 Va. 240, 3 S. E. (2d) 419; *Schools* v. *Walker*, 187 Va. 619, 47 S. E. (2d) 418.

The matter is now before us on a writ of error granted Von Roy to review the action of the trial court in setting aside the verdict in his favor and rendering judgment against him. The defendants, Crowe, did not appeal from the judgment against them. That judgment has become final, and the negligence of those two defendants has been established and is not now in issue. The only questions presented to us are whether Von Roy was guilty of negligence as a matter of law, and, if so, whether such negligence was a proximate cause of the accident.

In view of the verdict of the jury in favor of Von Roy, the evidence will be set out as is most favorable to him.

The accident occurred about two o'clock p. m., on November 25, 1952, on a clear, dry day, on United States Highway Route No. 460, at its junction with a country road known as the "Old Turnpike" in Bedford County. Route No. 460 is a paved two-lane east-west highway, the traffic lanes being marked by a solid white line to the left of the westbound traffic lane and a broken white line to the left of the eastbound lane. "Old Turnpike" is a gravel road leading diagonally off Route No. 460 to the southwest forming a connecting link between Route No. 460 and a secondary road, No. 67. West of the intersection of these two roads is the crest of a hill or knoll which Route No. 460 gradually ascends for 200 yards or more. A short distance east of the intersection Route No. 460 curves slightly to the north. A State Trooper said that opposite the intersection the westbound driver of an automobile could see an approaching car "well over 250 feet ahead." West of the crest of the hill the road descends to what is termed a "dip," which provides a similar limitation of view to eastbound drivers.

The facts and circumstances surrounding the accident are shown in the testimony of four eye-witnesses and by several photographic exhibits. There is little or no conflict in the material evidence.

On the day and at the time in question, Furman Whitescarver, Jr., accompanied by John Ray Jennings and another person, was driving his father's 1951 Oldsmobile sedan in a westerly direction on Route No. 460, immediately behind Fred Von Roy, who was operating a 1929 model Ford coupe. Mrs. Flora Crowe, accompanied by her husband, was driving a 1952 Nash automobile, owned by her husband, in an easterly direction on Route No. 460.

Furman Whitescarver, Jr., testified that he was proceeding about 30 yards behind Von Roy at a speed of about 50 miles per hour; that he saw Von Roy give a hand signal for a left turn, and at the same time saw the Crowe car coming over the hill, and he slowed down; that Von Roy traveled about 30 feet with his hand out and when he got opposite the entrance to the "Old Turnpike," he "suddenly cut across the highway" to the left; that the Crowe car was "around 20 yards away" in its proper lane of travel, in front of and in full view of himself and Von Roy when the latter made his left turn; that he saw an accident was going to happen, drove his car at from 2 to 5 miles per hour to the graveled right-hand shoulder of

the road, and was practically at a stop when the left front of the Crowe car struck the left front of his car. He admitted, on cross-examination, that he had formerly said that he had not seen the Crowe automobile until Von Roy was opposite the entrance of "Old Turnpike." He, however, repeated his statement that he did see the Crowe car while Von Roy was making a signal for a left-hand turn, and before the turn was made.

John Ray Jennings, seated on the front seat of the Whitescarver car, testified that he saw Von Roy's car "slowing down and kinda to the middle of the road and when we got closer he gave a signal." Jennings said he did not see any other car at that time, "but when we got on up there he (Von Roy) started to make a turn there over the hill came the Nash." He added Von Roy's car was not then "in the left lane;" he had "just barely started" into that lane; and "You could not see the side of his car." He estimated the speed of the Crowe car as 45 or 50 miles an hour. He said that if Von Roy had stopped his car "straddle of the line," Mrs. Crowe might have had room to pass by going "on the shoulder a little bit, but not much. There was room to squeeze by but it would have been dangerous to have done so."

Von Roy, a 69-year-old retired Civil Engineer, testified that he ascended the hill at a speed of between 35 to 45 miles an hour, keeping a lookout for other traffic; that he observed two automobiles behind him and remembered that in the past he had "two particular cars" try to pass him. Intending to turn left into "Old Turnpike," he said he gave a signal at approximately 100 feet before he got to the place where he made the turn, and "kept it out until just before I started to turn, and I looked back to see if the car behind had caught my signal and then went on up to turn. As I started my turn I heard brakes squeaking and looked up and saw the Crowe car coming, and if I stopped there she would have run into me, it could not have avoided hitting me, so I kept on into the drive and as I just about cleared the road I heard the crash." Upon cross-examination, he stated that before he looked backward, he looked ahead and saw no traffic in front of him, and that the first time he saw the Crowe car was after its collision with the Whitescarver car. The Ford coupe was then about 2 or 3 feet off the paved surface of Highway No. 460. He said he made a 45-degree turn, and that the "upper edge" of "Old Turnpike" was 200 feet from the point where tire marks of Mrs. Crowe's car first appeared on the road.

The further testimony of Von Roy as to where he was looking both before and when he "started to turn" is clear, revealing and convincing. We quote his exact words in answer to questions of counsel:

"Q. Do you feel you would be in a better position to have seen west than somebody back down here?

"A. I should have. I was looking to see if he had seen my signal, and just then the car must have come over the hill.

"Q. I am confident you would not have made the turn if you knew the car was coming down the road right at you?

"A. No.

"Q. If you had looked west do you think you could have seen it?

"A. I ought to have seen it as soon as they did, but it took several seconds for it to come in sight.

"Q. You think you were looking back east at the time?

"A. I must have been.

\* \* \* \* \* \* \*

"Q. In which direction did you look first?

"A. I looked ahead first.

"Q. And then you looked back. Did you look ahead any more or did you keep your attention on the car that was following you?

"A. While I was looking back I started making my turn.

"Q. I mean as you started making your turn did you look ahead, any more?

"A. Not until I heard the screeching of the brakes.

"Q. You were looking back?

"A. I was looking back.

\* \* \* \* \* \* \*

"Q. As I understand your testimony, you gave a left turn signal and you were concerned over the Whitescarver car which was travelling faster than yours?

"A. That had something to do with it, but in the past I had had two particular cars to try to pass me—I was thinking about the car behind me.

"Q. And your attention was on that car as you made your turn?

"A. Yes.

"Q. And you did not know anything about the Crowe car until you heard the brakes screeching?

"A. Yes, that is right.

"Q. And didn't see the Crowe car until after the accident?

"A. Yes.

\*      \*      \*      \*      \*      \*      \*

"Q. Did you take a long look behind you or just a glance?

"A. I was looking back from the time—I don't know how long, probably a second or two. I was looking back when I started my turn and I was touching the white line or may have been across the white line."

All three of the foregoing witnesses agreed that Von Roy was in a better position than any one of them to see the oncoming Crowe car, both because he was at a higher position on the grade and was driving a car which raised him higher above the pavement. It was not denied that if Von Roy had looked the Crowe car was in full view of him when he started to turn left in front of it. The only explanation he gave for his failure to see the car was that he was looking back to the rear, that is, to the east, at the time it came within view from the west.

Mrs. Crowe said that keeping a lookout ahead, she approached the point of the accident at an estimated speed of 55 miles an hour. She first saw Von Roy's automobile as she got over the crest of the hill and it was on his "own side of the road, the front wheel was just over the white line." It did not appear to her to be moving, but if it was moving it was by slow motion. She saw Von Roy's hand out for a left turn, applied her brakes, and "went down the highway a little way." She did not blow her horn because she thought that he would stay where he was, and she would pass to the right of his automobile; and that "then when he turned out in front of me I cut my car to the left and I saw an opening that I thought I could get to. I had my brakes on and when I cut my car to such a sharp angle it started to skid." She explained that she did not turn to the right because she would be going in the same direction he was going. Asked whether she could have stopped when she first saw Von Roy's car, she replied: "I suppose I could. It happened so quick I thought he was going to stay where he was." Her husband knew nothing about the accident because he was engaged at the time in working a cross-word puzzle.

G. H. Coleman, a State Traffic Officer, testified that the accident happened on a straight road, on a slight grade, on a dry and clear day. He said the skid marks made by Mrs. Crowe's car started on her side of the road, then cut abruptly to her left, and then extended to where she struck the Whitescarver car. He first said the skid marks extended 53 steps and later that there were 120 feet of skid marks on the hard surface, and 54 feet on the gravel shoulder. The shoulder was five and one-half to six feet wide. The speed limit in effect on the highway at the place of the accident was 55 miles an hour.

Claude Ruff, a Deputy Sheriff of Bedford County, testified that he was driving eastwardly approximately 200 yards behind the Crowe car, which he thought was running between 45 and 50 miles an hour. He came on the scene of the accident almost immediately after it occurred and the Crowe and Whitescarver cars were still "bouncing up and down," when he arrived; that he observed the Von Roy car for the first time when he was told by Whitescarver, Jr., that the accident would not have occurred had it not been for the driver of another car.

The amount of the damages to the Whitescarver automobile is not in question.

Von Roy contends that he was not guilty of any negligence in the first place. He insists that since he had looked ahead before giving his signal for a left turn, and had not seen the Crowe car, that car must have been in the "dip" in the road west of the hill; and that when he began to make his turn it was too late for him to stop because of the cars behind him. His counsel argues that it was "a coincidence, though an unfortunate one, that the Crowe car remained concealed from view as he looked ahead and then came into view as he looked back and began his turn when it was too late to stop." He contends that not only was the question of his negligence one for the jury, but if he was negligent it was also for the jury to determine whether it was a proximate cause of the accident.

The power and duty of a court to set aside a verdict that is contrary to the evidence or without evidence to support it, and to enter final judgment when there is sufficient evidence to decide the case on its merits is not in question. Code, § 8-352. Nor is it challenged that, upon review by this court, a verdict which has been disapproved by the trial court is not entitled to the same weight as one that has been approved by it. *Clark* v. *Parker,* 161 Va. 480, 171 S. E. 600; *Schools* v. *Walker, supra.*

■ The correct conclusion of this case is dependent upon an evaluation of the testimony of Von Roy himself. The following well settled principle has been often stated by this Court:

"No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified." *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652; *Chappell* v. *White*, 182 Va. 625, 29 S. E. (2d) 858; *Clayton* v. *Taylor*, 193 Va. 555, 560, 69 S. E. (2d) 424.

■ Code, § 46-233 provides that "Every driver who intends to start, stop, turn or partly turn from a direct line shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in §§ 46-234, 46-235 or 46-237, plainly visible to the driver of such other vehicle, of his intention to make such movement. (1932, p. 654; 1934, p. 400; Michie Code 1942, § 2154(122)."

We have interpreted the language, "first see that such movement can be made in safety," to mean that the motorist "who intends to start, stop, turn or partly turn from a direct line," must "use reasonable and ordinary care under the circumstances to see that such movement can be made in safety." *Smith* v. *Clark*, 187 Va. 181, 189, 190, 46 S. E. (2d) 21, 25; *Sink* v. *Masterson*, 191 Va. 618, 624, 625, 61 S. E. (2d) 863. See also *Schools* v. *Walker, supra*, 187 Va. 624, 625.

Implicit in the requirement of the use of reasonable and ordinary care to see that a turn can be made with safety is the duty to keep a reasonable lookout for oncoming vehicles and to see any such vehicles approaching in plain view. *Schools* v. *Walker, supra; Perry* v. *Thompson*, 196 Va. 817, 86 S. E. (2d) 35; *Hopson v. Goolsby*, 196 Va. 832, 86 S. E. (2d) 149.

■ The testimony of Von Roy himself, the uncontradicted evidence of the eye-witnesses and the physical facts show, at the least, that the Crowe car was in full view before Von Roy actually turned into the leftbound lane. It will be remembered that Von Roy said if he had stopped his car where he was when he "heard brakes squeaking," Mrs. Crowe's car "could not have avoided hitting" him. This testimony and other undisputed evidence establishes the near-

ness of the approaching Nash. Its brakes were not applied until after it had come over the crest of the hill, and Mrs. Crowe had seen Von Roy giving a signal for a left turn. If Von Roy had looked ahead he would have seen the Nash before its brakes were applied. Having observed his duty to vehicles behind him, he also owed the duty of keeping a lookout for vehicles approaching in front. What Whitescarver, Jr. and Jennings saw, he could himself have seen and seen earlier. What their view disclosed to them as likely to happen would doubtlessly have impressed him in the same way. A mere glance ahead before he started to turn would have disclosed the Crowe car a distance of more than 200 feet away. There was no necessity for him to continue to look back after he had given a correct signal of his intention to turn in plain view of the drivers of the cars following him. There was nothing to keep him from looking ahead and seeing the Crowe car, and there was every reason why he should have looked ahead. For his failure to do so he offers no reasonable explanation. He merely says he was concerned with the car or cars following him, and· was continuing to look backward until he had commenced his turn, because he had remembered what had happened in the past.

Statutory duty, as well as ordinary prudence, requires the driver of a motor vehicle "who intends to start, stop, turn or partly turn from a direct line" to give not only a correct signal of his intention to make such movement when the operator of any other vehicle may be affected, but also that he "shall first see that such movement can be made in safety."

A driver of a motor vehicle is under the absolute duty to see an oncoming vehicle which is in such plain view that looking with reasonable care he is bound to have seen it. *Oliver* v. *Forsyth*, 190 Va. 710, 716, 58 S. E. (2d) 49, 51; *Hobbs* v. *Thorns*, 195 Va. 639, 645, 79 S. E. (2d) 854, 857; *Yellow Cab Co.* v. *Eden*, 178 Va. 325, 341, 16 S. E. (2d) 625; *Perry* v. *Thompson, supra.*

"The duty of looking is based on the wisdom of seeing whether traffic is approaching, where and at what speed. If looking discloses approaching traffic, then the right to proceed is to be tested by whether a person of ordinary prudence would attempt it. *Rhoades* v. *Meadows*, 189 Va. 558, 562, 54 S. E. (2d) 123, 125. *But if a person having a duty to look 'carelessly undertakes to cross without looking, or if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path,*

*he is guilty of negligence as a matter of law.*' " (Italics added.) *Hopson* v. *Goolsby*, 196 Va. 832, 86 S.E. (2d) 149.

See also *Nehi Bottling Co.* v. *Lambert*, 196 Va. 949, 86 S. E. (2d) 156.

Von Roy admits his failure to look when looking would have been effective. Failing to look, he failed to see what he should have seen. Whether he saw the Crowe car at the time he heard the application of its brakes, or did not see it until after the collision, as he admitted on cross-examination, is not important. What is important is that as he started his turn and heard "brakes squeaking" the Crowe car had already come over the crest of the hill, as shown by the admissions of Von Roy, the tire marks of that car, and the undisputed evidence of Mrs. Crowe. It is plain from his own testimony that, in making the turn under the circumstances, he failed to exercise ordinary and reasonable care to see that it could be made with safety. About that reasonable men should not differ, and he was, therefore, guilty of negligence as a matter of law.

In *Schools* v. *Walker, supra,* 187 Va. 619, 629, 630, Mr. Justice Buchanan quoted with approval the following definition of proximate cause:

"In the law of damages the proximate cause of an injury may in general be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, where, had it not happened, the injury would not have been inflicted, notwithstanding the latter. * * *.

"* * * It is not essential, therefore, for a plaintiff to show that an act, claimed to have been the proximate cause of a certain result, was the only cause. It is sufficient if it be established that the defendant's act produced or set in motion other agencies, which in turn produced or contributed to the final result. * * * *Chesapeake, etc., R. Co.* v. *Wills,* 111 Va. 32, 37-38, 68 S. E. 395, 397, 32 L. R. A. (N. S.) 280.

"* * * If two defendants are negligent one of them can not be exonerated by urging and showing the negligence of the other. Where the concurring negligence of the two produces a single injury and each is its proximate cause they are both liable. *Yonker* v. *Williams,* 169 Va. 294, 299, 192 S. E. 753, 755. *Richmond Coca-Cola Bottling Works* v. *Andrews, supra.*"

Tested by the above definition, we think it clear that the negligence of Von Roy was a proximate cause of the accident in

question. His negligent left-hand turn in front of the approaching Crowe car caused the action taken by Mrs. Crowe. It produced and set in motion another agency which, in turn, produced the accident. Had he not made the turn the collision between the Crowe and Whitescarver automobiles would not have occurred. His negligence combined with the negligence of Mrs. Crowe caused the damages complained of as a natural and probable consequence under the circumstances, and he is and ought to be liable along with the Crowes for the damages sustained by Whitescarver.

Von Roy relies upon a number of cases to support his contention that the questions at issue were exclusively for a jury. An examination of those cases will disclose that the situation of the highways, the opportunities of view presented, and the conduct of the drivers of the vehicles involved were different from the facts, circumstances and surroundings here. In those cases material facts relating to the accidents were in conflict, and, therefore, jury questions were presented. Here, as we have shown, the material facts are undisputed, and require only the application of the proper legal principles.

We find no merit in the contention that Von Roy having entered the intersection first had the right of way under Code, § 46-239, and was accordingly free from negligence.

In *Johnson* v. *Harrison*, 161 Va. 804, 808, 172 S. E. 259, this is said:

"The driver of an automobile will not be permitted to drive blindly into another fast approaching automobile, simply because he has the right of way over such other automobile. For the plaintiff to stand upon his right of way and fail or refuse to look for another automobile which is using the intersecting road when such other automobile is in plain view and approaching at a dangerous speed is the clearest kind of concurring negligence."

Upon all the facts and circumstances of the case, it is our opinion that the verdict of the jury, which exonerated Von Roy from liability, was contrary to the law and the evidence, and should have been set aside. The action of the court in entering judgment against Von Roy was right and proper, and it is, therefore, affirmed.

*Affirmed.*