## Louis BITTNER

v.

## Vera Mary LITTLE and Harry Little.

### Civ. A. No. 24432.

United States District Court
E. D. Pennsylvania.

Dec. 4, 1958.

Morris H. Beer, New York City, and Robert A. Detweiler, Philadelphia, Pa., for plaintiff.

Edward C. German and James M. Marsh, of LaBrum & Doak, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

This case comes before the court on defendants' Motion to Dismiss this personal injury action arising out of an automobile accident in Virginia. The record, for the purposes of this motion, discloses this situation:

Plaintiff, a citizen and resident of New York, was driving his automobile in a northerly direction on Route 301 in Virginia. He was accompanied by one Daniel De Bono. Luther L. Waring, a citizen and resident of New York, now deceased, was driving south and collided almost head-on with plaintiff, even though plaintiff was nearly off the highway to his right trying to avoid Waring. Vera Mary Little, accompanied by her husband, Harry Little, defendants herein, both of whom are citizens and residents of Pennsylvania, was driving north behind plaintiff and, after the Bittner-Waring collision, collided with the rear of the car operated by plaintiff Bittner. As a result of these events, plaintiff sustained

personal injuries and property damage. Plaintiff, for $9,000 received for his personal injuries and property damage, executed in New York to the Estate of Waring a document entitled "General Release" (see Exhibit A attached to Document No. 3 in Clerk's file). This release expressly reserved plaintiff's right of action against the Littles. De Bono executed a similar release upon receipt of $7,500 from the Estate of Waring. De Bono then tried to sue plaintiff Bittner in New York, but his complaint was dismissed by the Supreme Court of New York on the ground that, under the law of Virginia, De Bono's release of Waring barred him from recovering from Bittner or any other tortfeasor, regardless of an expressed reservation of claim. Bittner, by a complaint filed April 7, 1958, now seeks to recover from the defendants Little. Defendants' motion to dismiss is grounded upon the law of Virginia, which, they contend, applies in the instant case since Virginia was the place of the accident.

Since this action in tort is in this court by virtue of diversity jurisdiction, this court must act as a Pennsylvania court would in dealing with a suit for damages resulting from a tort occurring outside of Pennsylvania. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Halprin v. Mora, 3 Cir., 1956, 231 F.2d 197, 199; Tomao v. A. P. DeSanno & Son, 3 Cir., 1954, 209 F.2d 544, 545; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1948, 166 F.2d 908, 910. In a tort action, the Pennsylvania courts would refer to the law of the place of the wrong to determine the rights and liabilities of the parties. Builders Supply Co. v. McCabe, 1951, 366 Pa. 322, 77 A.2d 368, 24 A.L.R. 2d 319; Foley v. Pittsburgh-Des Moines Co., 1949, 363 Pa. 1, 68 A.2d 517; Sumner v. Brown, 1933, 312 Pa. 124, 167 A. 315; Restatement, Conflict of Laws, § 379. However, after exhaustive research, no Pennsylvania case has been found indicating a rule of reference as to the most important question in this case—namely, what law governs the effect of a document in the nature of a release on the liability of a defendant in a tort action.[1] In the absence of exact precedent in Pennsylvania, "other available data is to be considered." Moyer v. Van-Dye-Way Corporation, 3 Cir., 1942, 126 F.2d 339, 340; also, Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 1942, 125 F.2d 820, 822.

As stated in § 388 of the Restatement of Conflicts:

"If there is a defense on the merits to the plaintiff's claim by the law of the place of wrong, no recovery can be had on the claim in another state."

Section 389 of the Restatement of Conflicts states that:

"A liability to pay damages for a tort can be discharged or modified by the law of the state which created it."

Such law may be by way of common law principles, as well as by statute.[2] See Beale, Conflict of Laws, Vol. II (1935), § 389.1, pp. 1303–1304. The determination of extent of liability questions is re-

1. In Western Newspaper Union v. Woodward, D.C.W.D.Mo.1955, 133 F.Supp. 17, at page 23, Judge (now Mr. Justice) Whittaker said:

"Inasmuch as the claimed bar of this action rests entirely upon the release, it would not be necessary presently to determine what law governs the tort were it not for the fact that the cases hold that a contract of release, absent, as here, express designation of other laws to control it, is presumed to have been made in contemplation of, and, hence, to be governed by, the laws of the state that created or gave rise to the right thereby released, but because of that fact it is necessary to determine what law governs the tort, and so doing will also determine the law that governs the contract of release."

See, also, Preine v. Freeman, D.C.E.D.Va. 1953, 112 F.Supp. 257, 260. In 76 C.J.S. Release § 39, p. 672, it is stated that:

"The construction and validity of a release are governed by the law of the place where it is executed, * * *; but the validity of a release as a defense in an action in tort is governed by the law of place of injury."

These are the only authorities found directly in point.

2. The Pennsylvania view is apparently in accord with the Restatement. See Restatement, Conflict of Laws; Pa.Annot. (1936), §§ 388, 389.

ferred by Pennsylvania courts to the law of the place of the wrong.[3] See Builders Supply Co. v. McCabe, supra. The undersigned concludes, therefore, that, under the above authorities, Pennsylvania appellate courts would refer to the law of the place of the wrong to determine the effect of a release arising out of such wrong on the defendant's liability.[4] Under Virginia law, the law of the place where the accident in question occurred, a release of one joint tortfeasor operates to release all joint tortfeasors, regardless of the fact that the release may specifically reserve all rights of action by the releasor against those joint tortfeasors not parties to the release. Shortt v. Hudson Supply & Equipment Co., 1950, 191 Va. 306, 60 S.E.2d 900.[5] Defendants' motion is, accordingly, granted.[6]

3. Compare Taylor v. Adams Express Co., 1913, 52 Pa.Super. 449, and Hughes v. Pennsylvania Railroad Co., 1902, 202 Pa. 222, 51 A. 990, 63 L.R.A. 513, which hold that the effect of limitation of liability for negligence provisions contained in contracts for carriage of goods are governed by the law of the state in which the negligent injury or loss occurred.

4. Plaintiff contends that a document such as the one involved in the present case (see Exhibit A attached to Document No. 3 in Clerk's file) should be considered as a covenant not to sue and, therefore, considered as a contract. However, this contention does not meet the precise issue of this case—that is, would a Pennsylvania court look to the law of the place of the accident or the law of the place the release was entered into to determine the effect of such a document arising out of a tort claim on defendant's liability. The only conflicts rule that plaintiff refers to is the "grouping of contracts" (also called "center of gravity") theory. While this may be a conflicts rule for the courts of New York, it nowhere appears that the Pennsylvania courts have adopted such a rule with respect to tort causes of action.

Plaintiff also contends that the barring of a right of action by release is a matter of procedure to be governed by the law of the forum. However, it appears that this matter is not recognized by the editors of the Restatement, Conflict of Laws, as a matter of procedure. See §§ 584–625, especially §§ 601–606.

5. The correctness of this view of the law of Virginia is not contested by counsel for the plaintiff. Although plaintiff's supplemental brief relies on § 885 of the Restatement of Torts, the Supreme Court of Appeals of Virginia mentioned this Section in the Shortt case and held that the law of Virginia was contrary to that Section (at pages 903–905 of 60 S.E.2d) using this language at page 904:

"The plaintiff, having effected an accord and satisfaction with one tortfeasor, his claim against the others responsible for his injuries was discharged, notwithstanding his attempted reservation of the right to sue the latter. The satisfaction of the claim by the wrongdoer, and not the form of the instrument executed by the plaintiff, extinguished the claim of the latter."

Plaintiff does contend, however, that this principle of law does not apply in the present case on the ground that defendants Little and Luther L. Waring were not *joint* tortfeasors.. In support of this position, plaintiff cites Shaull v. A. S. Beck New York Shoe Co., Inc., 1952, 369 Pa. 112, 85 A.2d 698. Plaintiff apparently assumes that Pennsylvania law determines if persons are joint tortfeasors, regardless of where the accident occurred. The undersigned believes that such is not the case. Whether or not one is a joint tortfeasor depends on whether or not he is negligent concurrently with another, cf. Mason v. C. Lewis Lavine, Inc., 1931, 302 Pa. 472, 153 A. 754, and, as shown above, whether or not one is negligent depends on the law of the place of the wrong. Thus, Virginia law determines if the Littles and Waring are to be considered joint tortfeasors for the purpose of the Shortt rule. The Virginia courts consider as joint tortfeasors persons involved in multi-car collisions if such persons are found negligent. Richmond Coca Cola Bottling Works v. Andrews, 1939, 173 Va. 240, 3 S.E.2d 419; Van Roy v. Whitescarver, 1955, 197 Va. 384, 89 S.E.2d 346; cf. Builders Supply Co. v. McCabe, supra; Jeloszewski v. Sloan, 1953, 375 Pa. 360, 100 A.2d 480. Furthermore, the Shaull case, cited by plaintiff, does not involve a situation similar to that present in this case.

6. The following briefs are attached to this Memorandum Opinion: (a) Defendants' Brief In Support of Motion To Dismiss; (b) Brief of Plaintiff Contra Defendants' Motion To Dismiss; (c) Defendants' Supplemental Memorandum In Support of Motion To Dismiss; (d) Defendants' Reply Brief In Support of Motion To Dismiss; and (e) Plaintiff's Supplemental Memorandum of Law Contra Motion To Dismiss.