202 Va. 382 (1961)
WILLIAM (BILL) BROWN, ADMINISTRATOR OF THE ESTATE OF JOHN BROWN, DECEASED
v.
GRANDVILLE E. PETERS, ADMINISTRATOR OF THE ESTATE OF DOUGLAS LEE PETERS, DECEASED. DOUGLAS LEE PETERS, DECEASED, ET AL.
Record Nos. 5166, 5167.
Supreme Court of Virginia.
January 16, 1961.
Present, Eggleston, C.J., and Spratley, Buchanan, Whittle, Snead and
1. Douglas Lee Peters was killed while riding as a passenger in a car driven by defendant Ayers when that vehicle collided with that of John Brown, who was also killed. The collision occurred at night on a three-lane highway, at its intersection with a side road. Brown stopped in the center lane, gave a hand signal for a left turn and pulled into the path of the approaching Ayers car. This latter vehicle was traveling at a speed over 100 miles per hour according to the testimony of one of the passengers in it, a partial deaf mute named Fred Martin. The jury rendered verdicts against both defendants. On appeal Ayers complained that his counsel was not permitted to ask Martin if he had not stated to a man (identified as the insurance adjuster for Brown's insurance carrier) that Ayers' speed was between 50 and 60 miles per hour. This was not error, however, for such evidence was admissible only for the purpose of impeachment, and Martin had before the jury admitted making such prior inconsistent statements and had explained this fact in a fashion evidently satisfactory to the jury.
2. An instruction offered by Brown's administrator to the effect Brown, in making his left turn, could assume Ayers would obey the speed limit was correctly refused since it took no note of Brown's statutory duty to keep a reasonable lookout for oncoming vehicles approaching in plain view.
3. The jury's decision that plaintiff's decedent was not contributorily negligent was conclusive on this issue.
4. Hearsay evidence concerning advice given Fred Martin by his brother not to reveal the true speed of the Ayers' car was correctly refused admission.
5. Though Ayers' counsel complained because his argument to the jury had been limited to 25 minutes, the matter was one within the trial court's discretion according to the facts of the particular case. In the instant case, no prejudice was shown.
6. The jury was fully justified in concluding that the gross negligence of Ayers and the concurring negligence of Brown were the contributory proximate causes of the accident.
Error to judgments of the Clrcuit Court of Amherst county. Hon. C. G. Quesenbury, judge presiding. The opinion states the case.
Henry M. Sackett, Jr. (Williams, Robertson & Sackett, on brief), for plaintiff in error, William (Bill) Brown, Administrator.
William Rosenberger, Jr. (William B. Kizer; Perrow & Rosenberger, on brief), for plaintiff in error, Ernest William Ayers.
Paul Whitehead (J. Frank Shepherd, on brief), for defendants in error, Grandville E. Peters, Administrator, Et Al.
SPRATLEY
SPRATLEY, J., delivered the opinion of the court.
Grandville E. Peters, administrator of the estate of Douglas Lee Peters, deceased, instituted this proceeding against William (Bill) Brown, administrator of the estate of John Brown, deceased, and Ernest William Ayers by motion for judgment to recover damages for the death of his decedent, resulting from the collision of an automobile operated by John Brown with an automobile operated by Ayers, in which Douglas Lee Peters was a passenger. Plaintiff alleged *384 that the death of his decedent was due to the gross negligence of Ayers and to the concurrent contributing negligence of John Brown.
Each defendant filed a response. Ayers denied that he was guilty of gross negligence or any negligence, which proximately caused or contributed to the death of Peters, and the administrator of John Brown denied that his decedent was guilty of any negligence constituting a contributing proximate cause. Ayers further charged that Douglas Lee Peters was guilty of contributory negligence.
The jury returned a verdict in favor of the plaintiff against both defendants and judgment was entered accordingly. On respective petitions of the defendants, we granted to them writs of error.
There were some conflicts in the evidence; but since the jury resolved all such conflicts in favor of the plaintiff, the evidence will be stated in the light most favorable to the latter.
Douglas Lee Peters, 15 years of age, was killed while traveling as a guest in a 1956 Ford automobile sedan owned and operated by Ernest William Ayers, 19 years of age, when the Ayers' car collided with a 1949 Ford automobile operated by John Brown. The collision occurred about 11:00 p.m., March 7, 1959, on U.S. Highway 29, a hard surfaced road, near Monroe, Virginia, where Highway 29 is intersected on the eastern side by secondary State Highway 671. The weather was clear and the roadway dry. The headlights of both cars were burning.
Highway 29 is a three-lane roadway in the area of the accident, approximately 30 feet in width, and runs in a straight line on an ascending grade about 1190 feet south of the intersection, and in a straight line on an ascending grade about 1050 feet north to the crest of a hill. At the time of the collision, Ayers was proceeding in a northerly direction downgrade. He was accompanied by young Peters and E. W. Woody, Jr., on the front seat of his car, and by Henry Shrader and Fred A. Martin, each 20 years of age, in the rear seat. John Brown, operating the 1949 Ford, with his wife and her sister as passengers, was proceeding in a southerly direction downgrade on Highway 29. He had entered that highway from a side road on the east about 200 to 300 feet from its intersection with Route 671. Upon entering Highway 29, he traveled first in its southbound lane, then moved into the center lane and proceeded slowly a short distance to the intersection, stopped briefly in the intersection, then began to make a left turn across the northbound lane of Route 29, *385 in which the Ayers' car was traveling, and his vehicle was immediately struck on its right side by Ayers' car.
The collision occurred with such force that both automobiles were completely demolished. Fragments of each were scattered over a wide area. Douglas Lee Peters and Woody, occupants of the Ayers' car, and John Brown and the other two passengers in his car were killed. Ayers and the two other youths in his car were injured.
The actual point of impact was in the southern side of the intersection, in the northbound traffic lane of Route 29. The Brown car was knocked backwards 81 feet north of that point on the east side of Route 29, and headed west diagonally across that highway. The Ayers' car traveled a distance of 167 feet after the impact, and stopped north of the point of collision on the west side of the highway, headed south. One of the wheels of the Brown car was torn off and hurled upgrade a distance of 142 feet, striking a house off of the side of the highway with such force that an imprint of the tire was left on the building. The tire came off the wheel and landed in the yard about 5 feet away.
Fred A. Martin, a deaf mute, testified through an interpreter, who had taught him in a school for the deaf and blind. Martin is not totally deaf or totally mute, he can hear a little, and can speak a few audible words. His sight is unaffected. He can read lips well, understands hand signals, and, at times, while testifying responded to spoken questions with articulate words.
Martin said that when the Ayers' car was approximately 250 feet from the point of the collision, he saw the Brown car approaching the intersection in the middle lane, saw the driver of that car give a proper arm signal for a left turn; that as the Brown car proceeded to make a left turn, he looked at the speedometer in the Ayers' car, and it showed a speed of 110 miles per hour. He said that shortly before the accident, when he was at a tavern with the four youths who accompanied him in the Ayers' car, a bet had been made between Ayers and Shrader whether or not Ayers' car could run 120 miles an hour "going down a hill."
When they left the tavern, and started north on Route 29, Martin noticed the car travel for "quite a ways" between 55 and 60 miles per hour, and later reached 120 miles; he looked at the speedometer and the "needle went all the way over * * *;" that as the car proceeded down the hill approaching the scene of the accident, "I was looking *386 right at the speedometer and the car was making 110 miles per hour;" and that he then leaned over the back of the front seat, tapped Ayers on the shoulder and yelled., "Stop, Stop, Stop!" but Ayers refused to heed the warning and continued on with the same speed to the point of collision.
Shrader testified that during the afternoon and evening of the day of the accident, he had drunk nine or ten beers, and that before arriving at the scene of the accident he had gone to sleep and knew nothing about it. He denied participation in a bet with Ayers as to the speed of the latter's car; but said that there was some talk of a bet concerning a car owned by the father of E. W. Woody, Jr. and one owned by a man named Roy Cash, but no bet was made.
Martin, in answer to Shrader's testimony, said that his companions were excited and it was hard for him to read Ayers' lips, as he had never seen him before; that he heard the word "bet"; saw money put up; but that it was difficult for him to understand when more than one person talked at the same time; and it was so dark that he could not see them well enough to know exactly what they were talking about.
Ayers said that the circumstances of the collision were very "hazy" to him; that "I am not very clear about it;" and that he found it hard to remember what occurred, or to reconstruct the situation. He "imagined" he was traveling at "a moderate rate of speed, 55 or 60;" and that he "seen the car out in the middle lane and seems like the next thing I knew was the collision." He admtted that he first observed the Brown automobile when he saw its headlights, and was "right close on it." He did not know whether it was standing still or moving slowly. He did not remember whether he applied his brakes, or took any steps to avoid the collision. He denied that he had made a bet with anyone about the speed of any car.
A witness, R. L. Wilmer, who lives in his home a short distance south of the place of the accident, stated that as he was preparing to go to bed, he looked out of a partially open window which faces the highway, saw the light of the Ayers' car on the roadway, and heard the "roar of its motor." He watched the car until it had proceeded a distance of about 800 feet to the point where the collision occurred. He could not tell the speed at which it was running; but said "It was really going fast; it seemed to be over the speed limit." He "estimated" or "guessed" its speed to be between 80 and 90 miles per hour. *387 
Traveling southerly a short distance behind the Brown car were two automobiles. One was occupied by Preston Garrett, who was accompanied by Kenneth Layne and Thomas N. Manley, and the other occupied by J. W. Sutton and Miss Katherine Vaughan as a passenger. Manley, Layne and Garrett testified that the two cars collided after Brown had begun his left turn from the center lane into the northbound lane. Garrett said he saw the lights on the Ayers' car "all the time." Neither he, Manley nor Layne paid any particular attention to that car until it was 150 to 200 feet from the intersection. They variously estimated its speed at 55 to 60 miles, and 60 to 65 miles per hour. Garrett's car passed the Brown car on the latter's right side when it stopped at the intersection, and had gotten two car lengths south of it when the collision occurred. Garrett did not think Ayers applied his brakes, and he did not see Brown give a signal. Layne observed signal lights on the Brown car when its brakes were applied to stop at the intersection, at which time he saw the Ayers' car about 100 feet distant, and he heard Garrett exclaim, "Watch out, the fool is going to pull out," referring to Brown. He looked back after the collision, and said that "It looked like an atomic blast, a blast of dust and lights." Neither Sutton nor Miss Vaughan could throw any light upon the movements of the cars of Ayers and John Brown before the accident, except Miss Vaughan, who said that just before the collision, she saw the Brown car turning across the road to its left. Sutton stopped his car at the warning of his passenger, and the Ayers' car, after the collision, stopped about 3 or 4 feet south of his vehicle.
Upon cross-examination by counsel for Ayers, Martin was asked if he had not told an adjuster for the company which carried Ayers' liability insurance, that at the time of that collision, Ayers was driving 55 to 60 miles an hour. Martin admitted that he told the man that the speed was over 55; but did not tell him that it was 110. Martin was then asked by the same counsel whether or not he had told a "heavy set fellow," identified as being an adjuster for Brown's insurance carrier, that Ayers' speed prior to the accident was 55 to 60 miles per hour. Martin admitted that he had made such a statement. Counsel for Brown objected to the admission of the evidence of the adjuster to that effect on the ground that the presence of the insurance adjuster before the jury, a man well known in the county as a representative of an insurance company, would present evidence of the insurance responsibility of his client. The *388 trial court sustained the objection. Martin was then allowed to explain why he had made statements inconsistent with his testimony. He said that he did so out of fear, because "several boys" had told him if he said how fast Ayers was really going, he might be put in jail. He further said that neither Ayers nor any of the occupants of his automobile on the night of the accident were included among the "several boys." He indicated that the threat came from one of his brothers.
Ayers challenges the judgment on the grounds that the evidence was insufficient to show that he was guilty of gross negligence; that the trial court erred in the admission of, and in the exclusion of certain testimony; erred in the granting and refusal of certain instructions, especially Instruction H-1, granted at the request of counsel for Peters; and in refusing to grant counsel sufficient time to argue the case before the jury. He especially contends that the evidence of Martin is unworthy of belief.
Brown's administrator objected to the judgment on the ground that the court erred in the admission and rejection of certain evidence, and in the granting and refusal of instructions. His counsel, in the argument before us, said that he relied principally on his assignment of error to the refusal of the court to grant Instruction G-1, setting out that "John Brown in making such movement [a left turn] had the right to assume that Ernest William Ayers in his approach to said intersection would obey the law and would not operate his automobile at a speed in excess of 55 M.P.H. and that John Brown had the right to act on that assumption until he knew or in the exercise of reasonable care he should have known otherwise."
We find no prejudicial error in the admission and rejection of testimony, nor in the granting and refusal of instructions. We deem it sufficient to discuss only those assignments of error which appear to be principally relied upon by the defendants. Each defendant endeavored to relieve himself of liability and place it on the other. Ayers contends that he was not guilty of gross negligence and that the negligence of John Brown was the sole proximate cause of the accident; while Brown's administrator insists that the accident was solely due to the gross negligence of Ayers.
A total of 26 instructions were given to the jury, including 10 on behalf of the defendant, Brown, and 10 on behalf of Ayers. A consideration of them covers 27 pages of the printed record. As given, *389 they clearly and correctly spell out the respective duties and liabilities of the parties, and define what constitutes ordinary negligence, gross negligence, and contributory negligence.
 Martin having, without evasion, admitted his prior inconsistent statements with reference to the speed of Ayers' car, there was no need to prove that he had made such statements by allowing the adjustor for Brown's insurance carrier to testify to that fact.
The evidence of the prior inconsistent statements was admissible for the purpose of impeachment only. The weight and credibility of Martin's testimony was for the determination of the jury. Liberty Mutual Insurance Company Tiller, 189 Va. 544, 548, 53 S.E.2d 814; Bristow Brauer, 175 Va. 118, 123, 7 S.E.2d 93. A witness may be allowed to explain a prior inconsistent statement, and his explanation should be received and considered by the jury. Adams Ristine, 138 Va. 273, 122 S.E. 126; 58 Am. Jur., Witnesses, | 778, page 427; The Law of Evidence, Michie, | 41, pages 75 and 76.
 We find no error in the court's refusal to grant Instruction G-1, requested by Brown's administrator. It fails to correctly set out the principles of law applicable to the facts attending the conduct of Brown. It overlooks the requirements of || 46.1-216 and 46.1-222, 1958 Replacement Volume, Code 1950.
Code | 46.1-216 provides that a person who intends to turn from a "direct line" of travel, "shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required * * *, plainly visible to the driver of such other vehicle, of his intention to make such movement."
Section 46.1-222 provides that: "The driver of a vehicle in an intersection and turning therein to the left and across the line of travel of vehicles within or approaching the intersection shall yield the right of way to such other vehicles, * * *."
Moveover, the instruction as worded takes no account of how close the Ayers' car was to the intersection, and the speed at which it was running.
Implicit in the requirements of the two statutes is the duty to keep a reasonable lookout for oncoming vehicles approaching in plain view. While Brown had the right to assume that the driver of the approaching car would observe traffic laws, this did not relieve him of the duty to comply with the above requirements. Sink Masterson, 191 Va. 618, 624, 61 S.E.2d 863; Von Roy Whitescarver, *390 197 Va. 384, 391, 89 S.E.2d 346; Spence Miller, 197 Va. 477, 479, 90 S.E.2d 131.
The trial court did not err in granting Instructions E-1 and H-1 at the request of Brown's administrator. Instruction E-1 is based on the provisions of Code, | 46.1-219 relating to the duty of a driver upon receiving signals from another driver. There was evidence showing that Brown did give a signal for a left turn when the Ayers' car was approximately 250 feet from the intersection. Instruction H-1 simply set out the duties of Ayers, and a statement of circumstances under which he would have been guilty of negligence.
 The question of contributory negligence of plaintiff's decedent was properly submitted to the jury in several instructions, and the jury's verdict settled that issue. The burden was on the defendant to prove not only that plaintiff's decedent was guilty of negligence, but that his negligence was a proximate, direct, efficient and contributing cause of his injury. Powell Virginian Railway Company, 187 Va. 384, 391, 46 S.E.2d 429; and Elswick Collins, 194 Va. 292. 295, 72 S.E.2d 626.
 The court did not err in refusing to allow Lester M. Martin and Mrs. L. M. Martin, brother and mother of Fred Martin, to testify with reference to conversations they had with Fred Martin at a hospital on the night of the accident, and at his home on the following day, in which Lester M. Martin allegedly told his brother, Fred, "not to tell anyone they were going 110 miles per hour * * * because I thought it would get him in trouble at the time." It was hearsay evidence, and not a part of the res gestae.
Whether or not a bet was made between Shrader and Ayers as to the speed the latter's car could make was purely a question of credibility between Martin and the other witnesses. Bet or no bet, it matters little if Ayers was operating his car at the speed shown by the evidence.
 Finally, Ayers contends that the trial court erred in limiting his argument before the jury to 25 minutes, in view of the amount of the evidence and instructions given. The plaintiff was allowed 50 minutes because he had to present his case against two defendants. Neither counsel for the defendant, Brown, who was allowed 25 minutes, nor the plaintiff objected to the time allowance.
The case was hotly contested by each of the parties. The evidence was fairly brief. The instructions, while repetitious in some respects, were couched in clear and simple language and not difficult for a layman to understand. *391 
A litigant has a right to have his case fully and fairly argued before the jury. In the absence of statutes providing otherwise, the time allowed counsel for argument is within the sound discretion of the court, the exercise of which will not be interfered with by an appellate court in the absence of a clear showing of prejudice to the substantial rights of the complaining party. No precise rule can be laid down as to the time limit to which the argumuent of counsel may be properly restricted. What limitation is a reasonable one will necessarily depend greatly upon the circumstances and nature of the particular case. Jones Commonwealth, 87 Va. 63, 68, 12 S.E. 226; Jerrell Norfolk, etc., Belt Line R. Co., 166 Va. 70, 74, 75, 184 S.E. 196; 2 Michie's Jur., Argument and Conduct of Counsel, | 3, page 62; 53 Am. Jur., Trial, || 461 and 462, pages 364 et seq.; 88 C.J.S., Trial, || 168 and 169, pages 333 et seq.
There is nothing to indicate that the rights of the defendants were prejudiced here. Counsel for Ayers argued on behalf of his client fully and completely at the bar of this Court within a period of about 30 minutes. With marked ability, he set out all of the evidence relied on, the errors assigned by him, and the principles of law involved as amply as could normally have been done in twice that time.
 The only real questions in the case related to the issue whether or not Ayers was guilty of gross negligence, and if so, whether such negligence and the negligence of John Brown were contributing proximate causes of the collision.
The uncontested evidence shows that Ayers was driving at an unreasonable, excessive and prohibited rate of speed, that he failed to keep his car under proper control, and did not maintain a proper lookout, in complete disregard of the safety of his passengers and persons using the highway. It also shows that John Brown failed to keep a proper lookout, and made a left turn in front of the rapidly approaching Ayers' car, without first seeing that the movement could be made in safety. It is clear that the drivers of each of the two automobiles saw, or by the exercise of reasonable care should have seen the other for almost 2,000 feet before the collision, and each failed to take steps to avoid the accident.
The evidence of Martin was not incredible. His testimony was straightforward, clear, positive and unevasive. It was supported in a large measure by the testimony of other witnesses, by the physical facts, and by the tragic results of the collision. It was accepted by the jury, and their verdict is stamped with the approval of the trial court. *392 
We agree with the trial court that the record is replete with evidence conclusively showing that Ayers was guilty of gross negligence, and that his gross negligence and the concurring negligence of John Brown were contributory proximate causes of the collision.
We find no prejudicial error committed against either of the defendants, and in our opinion they have had a fair and impartial trial. The judgment against them is affirmed.
Affirmed.