# Richmond

RAYMOND E. MURRAY, ETC. v. ELTON SMITHSON.

June 14, 1948.

Record No. 3322.

Present, All the Justices.

The opinion states the case.

*Frank L. McKinney* and *R. Garnett Bledsoe, Jr.*, for the plaintiff in error.

*Easley & Edmunds*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

On May 19, 1946, Raymond E Murray, a sixteen-year-old boy, was riding on the front seat of an automobile driven by Robert Murray, his father, on U. S. Highway No. 58. Mrs. Murray, plaintiff's mother, and two of her other children were on the back seat. Immediately after the automobile had passed the intersection of Routes No. 58 and No. 501 at Riverdale, Mrs. Murray said to her husband that they were out of chicken feed. Mr. Murray reduced his speed from 25 miles per hour to 4 or 5 miles and attempted to make a wide turn for the purpose of go-

ing back to the intersection. Before the rear wheels of his automobile had crossed the center of the highway, the car was struck by an east-bound, 1939 model Ford sedan, with a two-wheel trailer attached, driven by Elton Smithson who, with four passengers, was *en route* from Salisbury, North Carolina, to Norfolk, Virginia. The force of the impact threw Mr. Murray out of his car and knocked him temporarily unconscious. Raymond received several severe bruises, a slight concussion of the brain, and a broken leg for which he seeks compensation in this action against Smithson. The jury returned a verdict in his favor for $5,000 which the trial court set aside.

The decisive question presented is whether the evidence is sufficient to support the conclusion of the jury that the concurring negligence of defendant was a proximate cause of the collision and resulting injuries to plaintiff.

Route No. 58 is a much-travelled highway extending east and west. At the scene of the accident the hard surfaced portion is 21 feet wide with a gravel shoulder 4 feet wide on the south side and a gray soil shoulder 8 feet wide on the north side. The highway for several hundred yards east and west of the point of collision is comparatively straight and level. Fifty-six steps or approximately 168 feet west of the point of collision there is a railroad grade crossing. West of this crossing is a slight dip in the road; beyond the dip is a curve. A few feet east of the point of impact and to the south of the 4-foot shoulder there is a telephone pole. The land for several feet east, west, and south around the pole is somewhat rough but at times is used as a parking lot for cars. The center of the highway is marked by two white lines. The line slightly to the north of the center is an unbroken white line; the white line slightly to the south of the center is a broken line indicating that west-bound cars should not be driven south of the center of the highway, and that east-bound cars, if traffic permits, may be driven to the north of the center.

The accident happened about 7 P. M. Visibility was

good, the weather clear, and the roadbed dry. There were no other cars in sight.

The Murray car was being driven west in the western traffic lane at approximately 25 miles per hour until Mrs. Murray reminded her husband of the chicken feed. He then determined to make a wide turn around the telephone pole south of the road, and go back to the store at Riverdale. He reduced his speed to 4 or 5 miles per hour. He looked westward, saw defendant's car approaching the railroad crossing, and thought that he could safely cross the east-bound traffic lane in front of it. "I then, watching the way I was making my turn," drove across the center of the highway, "glanced up," and the defendant's car "was right on me." He also testified, and the physical facts support his testimony on this point, that his right front wheel was only 4 feet over the center of the highway in the east-bound traffic lane when his car was struck by defendant's car.

The left front of the Smithson car hit the right front of the Murray car and drove it back east 18 feet. When the Murray car stopped, it was directly across the east-bound traffic lane, the front wheels near the south edge of the hard surface and the rear wheels about the center of the highway. After the impact, the Smithson car left the highway, the two-wheel trailer struck the telephone pole, and still attached to the car travelled 90 feet before coming to rest several feet south of the shoulder; that is, the Smithson car travelled 108 feet from the point of collision before it came to rest.

It is conceded that, if the two drivers, regardless of the rate of speed at which either was driving, had proceeded in the proper lanes of traffic, no accident would have occurred. Section 67, sub-sec. (e) of Chap. 327, Acts 1940, Code, 1942 (Michie), sec. 2154(114) (e), provides: "Wherever a highway is marked with double traffic lines consisting of a solid line immediately adjacent to a broken line, no vehicle shall be driven to the left of such line; if the solid line is on the right of the broken line." Section 2154(122) of

the Code requires every driver of a motor vehicle, before turning from a direct line of traffic, to use due care to see that such movement can be made in safety and to give a signal plainly visible to the driver of any other vehicle which may be affected by the movement.

■ Robert Murray gave no signal for a left turn. He drove across the unbroken white center line without attempting to estimate the speed of the east-bound car until the collision was imminent. These and other facts disclosed in this case convict him of gross negligence.

The evidence for plaintiff does not stop here. It goes further and proves that defendant was also guilty of negligence. It establishes the fact that defendant was driving an old model Ford sedan that, as he said, "somebody else had just about worn . . . . out." Not only were there five adults in the car but to it was attached "a homemade," two-wheel trailer itself weighting 500 pounds, carrying a load estimated to weigh between 250 and 300 pounds. No motor vehicle so loaded and equipped can be stopped within the same time and distance that it takes to stop a standard-equipped passenger car.

The testimony as to the speed defendant was driving is in conflict. He and the other occupants of his car stated that as he approached the crossing he was travelling 50 miles per hour, that he reduced his speed to 45 miles per hour as he went over the crossing, and immediately thereafter accelerated his speed.

The witnesses for plaintiff testified that, as defendant approached the crossing, he was driving from 80 to 90 miles an hour; the trailer was swaying from side to side and sometimes skidding; that he did not check his speed for the crossing; and that at the moment of impact he was still driving at undiminished speed. Defendant himself testified that he was in a hurry to get back to Norfolk, and that he wanted to reach this destination (approximately 175 miles from Riverdale) by 10 or 10:30 that night. On cross-examination he was asked the following question to which he gave the answer quoted: "Q. Some of the witnesses

have testified here that you were going eighty and ninety miles an hour. Were you doing that? A. No, sir. It wouldn't run that fast. It might have been doing it if it would, but I never saw over fifty on it with the trailer behind it. If it done fifty it done good, that is what I thought. If it would have gone that fast I might have been doing it."

Credible evidence convicts the drivers of both automobiles of negligence. We have held repeatedly that where separate and independent acts of negligence of two parties are the direct cause of a single injury to a third person and it is impossible to determine in what proportion each contributed to the injury, either or both are responsible for the whole injury. *Lavenstein* v. *Maile*, 146 Va. 789, 798, 132 S. E. 844, and cases cited. *Luck* v. *Rice*, 182 Va. 373, 29 S. E. (2d) 238. Each of these opinions quotes with approval the following language from 29 Cyc. 487:

"If the concurrent negligence of two or more persons combined together results in an injury to a third person he may recover from either or all. And in determining the liability of either of two persons whose concurrent negligence results in an injury, the comparative degrees of negligence are not to be considered, each being liable for the whole even though the other was equally culpable, or contributed in a greater degree to the injury; or the proportion in which the negligence of each contributed to the injury, or the degrees of care used, is not to be considered."

To make a "U" turn between intersections on a much-travelled highway without taking proper precaution to see that it can be made in safety is inviting disaster; to drive an old car heavily loaded with a trailer attached at an excessive rate of speed is equally dangerous. Smithson knew that he could not stop his car within the usual time and within the usual distance that a passenger car with standard equipment can be stopped. Care commensurate with known danger is ordinary care. No one can determine with any degree of certainty whether plaintiff would

have sustained any or as severe injuries if defendant had had his car under proper control and had been driving at a legal rate of speed. Defendant had approximately 9 feet, including the 4 feet of gravel shoulder, which he might have used to pass in safety if his car had been under proper control and had been travelling at a lawful rate of speed. But even if the defendant in the emergency had not chosen the wisest course, if he had been driving properly he might have applied his brakes and struck the Murray car with less force. Defendant was undoubtedly guilty of negligence. This negligence was concurrent with the negligence of Robert Murray which resulted in the injury to plaintiff. Defendant's speed and failure to apply his brakes certainly increased the force of the impact.

This court has said repeatedly that it will not sustain a motion to set aside a verdict on the ground that the evidence is insufficient to sustain it where the court is in doubt as to such sufficiency; nor will it sustain such a motion merely because the court, if on the jury, would have returned a different verdict. The yardstick by which such questions are determined is, if reasonable and fair-minded men may differ on the conclusion to be reached, then the verdict must be sustained.

While a verdict disapproved by the trial judge is not entitled to quite the same weight as a verdict approved by him, the only conclusion to be drawn from the evidence in this case is that fair-minded men may well differ as to whether the negligence of defendant was a proximate or an efficient cause of the injury sustained.

Defendant contends that the evidence convicts plaintiff of contributory negligence as a matter of law. This plaintiff was a sixteen-year-old boy who had never been permitted to drive his father's car. The boy said that during the three years immediately preceding the accident he had occasionally driven other people's cars. He testified that he saw defendant's car before it reached the crossing but did not realize it was being driven at an excessive rate of speed until it was on or had just passed the crossing. The

testimony for plaintiff tends to prove that the collision occurred approximately two seconds thereafter. Hence there was little if any time in which the plaintiff or any other passenger in the car could have said or could have done anything to have prevented the accident. On this issue the jury were fairly instructed, and their conclusion is binding upon the court.

The judgment of the trial court is reversed, the verdict of the jury will be reinstated, and final judgment for the plaintiff will be entered on the verdict.

*Reversed and final judgment.*