### FRANK WRIGHT v. MARIE ESTEP, ADMINISTRATRIX OF THE ESTATE OF HOBERT ESTEP, DECEASED.

December 1, 1952.

Record No. 3995.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*S. H. & George C. Sutherland* and *W. Clyde Dennis,* for the plaintiff in error.

*Pobst, Coleman & Rush,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Frank Wright, while riding as a guest passenger in a car driven by Hobert Estep along Highway No. 460 in Pike county, Kentucky, was severely injured when the car collided with another driven by Leonard Gooslin. Estep died a few days after the collision from injuries received therein. Wright instituted the present action at law in the Circuit Court of Buchanan county, Virginia, against Estep's administratrix to recover damages for his personal injuries.

The issue of the liability of the defendant's decedent was submitted to the jury under the law of Kentucky where proof of ordinary negligence will support a recovery in favor of a guest against his host. The jury found a verdict of $5,000 in favor of the plaintiff which the defendant administratrix moved the lower court to set aside on the ground that it was contrary to the law and evidence and without evidence to support it. Subsequently she moved that final judgment be entered in her favor. The plaintiff moved the court to set aside the verdict as to the amount of damages only and grant a new trial limited to the quantum of damages. The trial court overruled these motions, entered judgment on the verdict, and to review that judgment a writ of error was awarded the plaintiff.

The substance of the plaintiff's assignment of error is that the lower court erred in not setting aside the verdict and granting a new trial on the quantum of damages, because, he says, the verdict was grossly inadequate to compensate him for his injuries.

By an assignment of cross-error the defendant

challenged the sufficiency of the evidence to sustain a verdict for the plaintiff in any amount, but since that assignment was not filed within the time prescribed by Rule 5:1, § 4, we cannot consider it. However, a consideration of the weight and sufficiency of the evidence is quite material in passing upon the plaintiff's assignment of error and in prescribing the scope of a new trial, should one be ordered. *Rawle* v. *McIlhenny,* 163 Va. 735, 747, 748, 177 S. E. 214, 98 A. L. R. 930; *McDowell* v. *Portsmouth,* 184 Va. 548, 551, 35 S. E. (2d) 821, 822.

On August 5, 1950, Hobert Estep invited Frank Wright and Edgar Thompson to accompany him on a trip from Big Rock, Buchanan county, Virginia, to Shelby, Kentucky, a distance of some thirty-five miles. Estep was driving a 1937 Plymouth automobile and on the front seat with him were his four-year-old son and Wright. Thompson occupied the rear seat. As the car proceeded eastwardly down a slight grade and along a curve to the right it collided with the Gooslin car which was proceeding in the opposite direction.

The hard-surfaced portion of the road is paved to a width of eighteen feet with a center line painted on the surface. The shoulder on Estep's right, as he approached the point of the collision, is eight to ten feet wide and beyond that the terrain drops off to the Levisa river. The shoulder on the opposite side of the road is from two to three feet wide and flanked by a ditch beyond which a cliff rises.

The collision occurred about four p. m., at which time the weather was clear and the pavement dry. The only surviving eye-witnesses other than the Estep boy, who was too young to testify, were Wright, the plaintiff, and Thompson, passengers in the Estep car, and Gooslin, the driver of the other car. Both Wright and Thompson testified that as the Estep car proceeded around the curve, at a speed of thirty-five to forty-five miles an hour, it was traveling about the middle of the road with its left wheels across the center line. They observed the Gooslin car approaching from the opposite direction and likewise driven along the middle of the road. Thompson said the Gooslin car was "making very good speed." As the cars neared each other Estep turned slightly to the right, and when the vehicles were from fifty to one hundred feet apart he cut to the left. At the same time Gooslin cut to his right and the cars collided, the front of the Gooslin car striking the right front side of the

Estep car. The collision occurred, these witnesses testified, to Estep's left of the center line of the road—that is, in the right-hand lane of travel of the Gooslin car.

Gooslin, who was called as a witness for the plaintiff, testified that his car was always in its proper lane and that the collision was occasioned by Estep's cutting to his (Estep's) left and into the lane of the Gooslin car.

On the other hand, witnesses who visited the scene shortly after the collision and called by the defendant, testified that the tire marks of the Gooslin car, as it approached the point of the collision, were in Estep's right-hand lane.

All of the witnesses agreed that after the collision the Estep car was in the ditch next to the cliff on Estep's left-hand side of the road. They differ as to the exact position of the Gooslin car after the collision, some saying that it was in Estep's left-hand lane while others said it was near the center of the road, or even in Estep's right-hand lane.

There was evidence, admitted without objection, that before his death Estep said that he saw the Gooslin car approaching "on my side of the road" and that he thought the driver intended to make a left turn to go to a store which is located on the south side of the road, about 180 feet west of the point of collision. However, Gooslin said that he had no such intention, and neither Wright nor Thompson saw Gooslin give a signal indicating such an intended course.

The evidence is undisputed that as the cars approached neither slowed down, nor did the driver of either sound his horn.

The credibility of Wright and Thompson was vigorously assailed. There was testimony that shortly after the collision both had given statements quite at variance with their testimony at the trial. These statements tended to exonerate Estep of any fault for the collision and place the blame entirely on Gooslin, in that as the cars were meeting Gooslin was driving in Estep's proper lane of travel. Thompson has since instituted a like suit against Estep's administratix and, it is argued, is interested in fixing the blame for the accident on Estep.

Although Gooslin denied it, several witnesses testified that he was under the influence of intoxicating liquor immediately after the collision, and while still at the scene had thrown from his car a partly filled bottle of liquor. He was held in jail by

the Kentucky authorities on the night after the accident under a charge of driving while drunk.

The undisputed evidence is that the plaintiff was severely injured in the collision. He was hospitalized a number of times between the date of the accident, on August 5, and the following January. His spleen was bruised, became enlarged, ruptured, and had to be removed. As one of the attending physicians said, he "nearly died on the operating table and had to have several transfusions." He developed an abscess in the chest which required three operations and necessitated his remaining in the hospital for eight weeks. During these treatments narcotics were often necessary to alleviate his pain and suffering. His medical and hospital expenses amounted to approximately $2,400.

At the time of the accident the plaintiff was an able-bodied man, forty-eight years old, and earned as a coal miner $3,600 per year. At the date of the trial, which was just one year after the accident, he had been unable to resume his work and had lost his total earnings for a year. While his physicians were of opinion that his condition would improve, they thought that he would not be able to resume work as a coal miner but might be able to do "selective work," such as "working on the tipple, sand house and things of that nature" at the mines.

The verdict of $5,000 falls short by $1,000 of compensating him for his medical and hospital expenses and loss of earnings. No allowance was made him for the impairment of his earning capacity, the loss of future wages in his usual occupation, his pain and suffering, and other elements of damage clearly embodied in the court's instruction to the jury, to which no exception was taken. Clearly, we think, the verdict is inadequate to compensate him for the severe injuries he has suffered and loss he has sustained as the result of the accident.

Counsel for the defendant do not contend that the damages awarded the plaintiff were adequate to compensate him for his injuries. But they insist that the preponderance of the evidence shows that the collision was proximately due solely to the negligence of Gooslin. Hence, they argue, the case falls within the third classification defined in *Rawle* v. *McIlhenny, supra*, "in which clearly the decided preponderance of the evidence is *against* the right of the plaintiff to recover, though there is sufficient evidence to support a finding by the jury that the

defendant is liable.'' In such cases, we there said, ''it is generally held that the court will refuse to set aside the verdict for inadequacy.'' (163 Va., at page 749.)

We do not agree with the contention that the ''decided preponderance of the evidence'' shows that the collision was proximately due solely to the negligence of Gooslin. On the contrary, the direct evidence of the only eyewitnesses to the collision tended to show that it was proximately due, at least in part, to the negligence of Estep, in that he continued to drive at an undiminished speed along the middle of the road, or even in the wrong lane, until the collision became unavoidable. From the testimony of these witnesses the jury could have found that Estep should have slowed down, or brought his car to a stop if he was uncertain of the course of the other car.

It is true, as has been said, that the credibility of Wright and Thompson was attacked in such a manner and to such an extent as to cast doubt upon the truth of their testimony and their version as to how the collision occurred. Obviously, the jury were unwilling to give full value to the testimony of the plaintiff's witnesses and reached a compromise verdict, with the result that they awarded the plaintiff substantial but inadequate compensation for his injuries. In reaching this conclusion they disregarded the court's plain instruction as to what elements they should consider in fixing the amount.

The present case is distinguishable from *Glass* v. *David Pender Grocery Co.*, 174 Va. 196, 5 S. E. (2d) 478, strongly relied on by the plaintiff, in which we held that a plaintiff having been awarded inadequate damages was entitled to a new trial limited to the quantum of damages. There, as the opinion points out, the liability of the defendant was clear and not seriously questioned. Here the liability of the defendant was vigorously assailed and the evidence relating thereto was in conflict.

We are of opinion that the case falls within the fifth classification of cases outlined in *Rawle* v. *McIlhenny, supra,* ''in which there is sufficient evidence to support a verdict in favor of either the plaintiff or the defendant, but in which there is no clear preponderance of the evidence in favor of either.'' In such cases, we said, where ''the question as to the amount of damages is not distinctly separable from the matters involved in the issue as to liability, or the evidence with reference

to liability has probably exerted a material influence upon the jury in determining the amount of the verdict, or the evidence warrants the inference that, instead of deciding the question of liability, the jury has arbitrarily determined to make both parties bear a part of the burden of the injury,'' the verdict should be set aside and a new trial granted on all issues. (163 Va., at pages 749, 750.) See also, *Chappell* v. *White,* 184 Va. 810, 818, 819, 36 S. E. (2d) 524, 528.

For these reasons the judgment under review will be reversed, the verdict set aside, and the case remanded for a new trial on all issues.

*Reversed and remanded.*