## Richmond

JIM MAROULIS v. CLAYTON H. ELLIOTT, III, AN INFANT, ETC., ET AL.

JIM MAROULIS v. ERNEST P. GRETES, EXECUTOR, ETC., ET AL.

JIM MAROULIS v. ERNEST P. GRETES, ADMINISTRATOR, ETC., ET AL.

JIM MAROULIS v. GEORGE GEORGIADES, ETC., ET AL.

JIM MAROULIS v. NICHOLAS GEORGIADES, ET AL.

November 28, 1966.

Record Nos. 6243, 6244, 6245, 6246, 6247.

Present, All the Justices.

504

*Berryman Green, IV (Breeden, Howard & McMillan,* on brief), for the plaintiff in error.

*John M. Hollis* and *Aubrey R. Bowles, Jr. (Willcox, Savage, Lawrence, Dickson & Spindle; Bowles and Boyd; Stanley J. Bangel; Bangel, Bangel & Bangel; Robert S. Cohen; Amato, Babalas, Breit, Cohen, Rutter & Friedman; Augustus Anninos; Howell, Anninos & Daugherty,* on brief), for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Plaintiffs, Clayton H. Elliott, III, an infant suing by his father and next friend; Ernest P. Gretes, executor of the estate of Demetra S. Gretes, deceased; Ernest P. Gretes, administrator of the estate of Peter Ernest Gretes, deceased; George Georgiades, an infant suing

by his father and next friend; and Nicholas Georgiades, the father of George Georgiades, an infant, instituted separate motions for judgment against defendants, Weyland P. Britton, administrator of the estate of Thomas Chester LaFrage, deceased; Allen B. Silbert; and Jim Maroulis for wrongful death, injuries and damages which were alleged to have been proximately caused by the negligence of the defendants.

As the evidence and legal questions involved in each case were identical, the court, on motion of counsel for the plaintiffs, and with the consent of counsel for the defendants, entered an order directing that the cases be consolidated for trial. Responsive pleadings were filed by each of the defendants denying the allegations of negligence on their part, and that any such negligence proximately caused or contributed to the damages complained of.

The cases came on to be heard before a jury, which found verdicts in favor of each plaintiff against Wayland P. Britton, administrator, and Jim Maroulis. The verdicts were silent as to the defendant, Silbert. The amounts of the verdicts were: Clayton H. Elliott, III, $100,000.00; Ernest P. Gretes, executor, $35,000.00; Ernest P. Gretes, administrator, $15,000.00; George Georgiades, $25,000.00; and Nicholas Georgiades, $5,900.00.

Maroulis moved to set aside each of the verdicts as to him, and to enter judgments in his favor, or, in the alternative, to grant him new trials. The motion was overruled, and judgments were entered against Maroulis and Wayland P. Britton, administrator of the estate of LaFrage, and in favor of Allen B. Silbert. Exceptions were duly noted by Maroulis, and he sought and obtained this writ of error. No appeal was taken by Britton, administrator of the estate of LaFrage.

All questions of fact having been resolved in favor of the plaintiffs below, the evidence will be stated in the light most favorable to them.

The five actions arose out of an automobile accident, which occurred on U. S. Route 58, in the City of Chesapeake, Virginia, about 4:15 p. m., on Sunday, November 3, 1963.

By prearrangement, the parents of several Boy Scouts, and other adults interested in Boy Scout activities, met at a Scout camping area in North Carolina on Sunday afternoon to transport a troop of Boy Scouts on a return trip to Norfolk, sixty-five miles distant. At the suggestion of the Scoutmaster, Anthony Kehayas, seven automobiles carrying the boys were to proceed, insofar as was practical, in caravan fashion on the return trip. The automobiles then proceeded in the

following order: Kehayas, the Scoutmaster, in the first car; Mrs. Demetra Gretes carrying Peter Gretes, Clayton H. Elliott, III, and George Georgiades in the second car; Allen B. Silbert driving the third car; Jim Maroulis operating the fourth car; Herman Chapel the fifth car; Ralph Allen the sixth car; and Peter Pappas, Assistant Scoutmaster, the seventh and last car.

The trip was uneventful until they reached U. S. Route 58 and were traveling eastwardly thereon. Route 58 is a four-lane highway running generally in an east-west direction, with two lanes provided for eastbound traffic and two for westbound. The east and west lanes were divided by a double solid line. The weather was clear and driving conditions were good. The speed limit was fifty-five miles per hour. The highway was straight and level for a considerable distance east and west of the accident scene. East of the scene, the eastbound traffic lanes separate, the inside lane to go over an overpass to Norfolk, and the outside to go under the overpass to Portsmouth.

As the vehicles in the caravan proceeded on Route 58, they moved from the outside eastbound lane to the inside eastbound lane, in order to go over the overpass into Norfolk. The change-over had barely been made, when, suddenly and without warning, Kehayas, driver of the lead car in the caravan, was confronted with an automobile, a compact Valiant, being driven by LaFrage in a westerly direction within the inner eastbound lane of travel, the lane in which the Scout vehicles were proceeding easterly. Kehayas immediately turned his car to the left across the westbound lanes onto the shoulder of the westbound side of Route 58, narrowly avoiding the LaFrage vehicle. Immediately, or a fraction of a second later, the LaFrage car crashed headon into Mrs. Gretes' automobile. Several witnesses said that both vehicles rose in the air and all four wheels of each "seemed" to "completely" leave the pavement. Both cars stopped at the point of impact somewhat to the right of the inner eastbound lane of travel, in front of the remaining cars in the Boy Scout caravan.

When the Gretes automobile was struck by the Valiant, Silbert, who was following the Gretes car, three or four car lengths distant, at a speed estimated by him to be 40 or 45 miles per hour, immediately applied his brakes, swerved to his left, and came to a stop. The right front of the Silbert car struck the Gretes car a glancing blow on its rear; but the impact was so slight that none of the occupants of the Silbert car was hurt. "Instantaneously," or about "a second" thereafter the Maroulis car struck the Silbert automobile, causing the latter

car to be knocked from a standstill across the two westbound lanes of the highway, across the westbound shoulder down into a ditch, and into a tree, with such force that its front end was damaged and its hood caused to fly up. Two of its occupants were injured. Immediately after striking the Silbert car, the Maroulis car "plowed into the back of the Gretes car," causing the Gretes car to go up into the air a second time. The complete front of the Maroulis vehicle was demolished, and the whole of the rear of the Gretes vehicle severely damaged.

After the Maroulis automobile struck the Gretes car, it (the Maroulis car) bounced back several feet into the automobile driven by Chapel, which had almost come to a stop behind it. The force of striking the Chapel car was sufficient to make, according to a witness, "an accordion" out of the rear of the Maroulis automobile, to knock loose the hood of the Chapel car, and "jam" all of its doors, so that its passengers could not alight without help.

Several witnesses variously described the time between each of the events above mentioned as "instantaneously," "very short," "awful fast," "a second," "the snap of fingers," "fraction of a second," "spontaneously," "just an instant," "a matter of seconds," "immediately," "so fast," and "suddenly."

The distance between the Silbert and Maroulis cars, near the point of the accident, was specifically estimated by several witnesses as two car lengths. Maroulis said he thought he was "three or four car lengths" distant. One witness said the distance between Silbert and the Gretes car was slightly more than four car lengths. The speed of the cars in the caravan was estimated at from 40 to 55 miles per hour as they approached the scene of the collision.

Maroulis testified that he saw the Kehayas car when it "took off on the left." He "assumed" there was trouble ahead and "tried to apply his brakes;" but did "not really" get his brakes on. He said he did not see the Silbert car strike the Gretes car; but did see Silbert's car come to a stop.

An investigating police officer said Maroulis told him that when Silbert swerved to the left, he, Maroulis, hit the Silbert car, knocked it across the road into a ditch, and "then plowed into the back of the Gretes car." At the trial, Maroulis said he did not see the Silbert car go across the highway, and that to the best of his knowledge his car did not strike the Gretes car. He did not remember talking to the officer. He admitted, however, that his automobile had two collisions

on the occasion involved, in one of which his glasses were knocked off, and he was thereafter unable to see anything clearly on account of a blurred near-sighted vision.

It further appears from the evidence of Gerald Hedge, a disinterested witness, that shortly before the accident while he was driving his automobile, accompanied by his wife and two children, eastwardly in the outside eastbound lane of Route 58, behind an automobile driven by an unknown woman, he observed the caravan of Boy Scout cars pass him in the inside eastbound lane. Thereafter, the Scout cars turned into the outside eastbound lane between the automobile of Hedge and that of the unknown woman. Hedge continued behind the Scout cars for a few seconds until he found himself "sandwiched" between the Scout cars and other cars coming up behind him in the outside eastbound lane. Not caring to follow the Scout cars too closely, he drove into the inside eastbound lane, and started to pass the Boy Scout caravan at a speed not exceeding 55 miles per hour. When he reached a point about 100 feet ahead of the Scout cars, he observed through his rear view mirror that the Scout caravan was changing to the inside eastbound lane, falling in behind him in that lane. His wife suddenly screamed because she saw an automobile coming westwardly towards her in the same lane, in which her car and the Scout caravan were traveling. The car was a 1960 Valiant operated by the decedent, LaFrage, and was about "a city block" ahead of the car of Hedge. Hedge turned his car into the right outside eastbound lane, which was clear at that time and place, and he was not hit. Hedge and his wife watched the Valiant automobile as it passed them drive straight westwardly in the inside eastbound lane. He observed the lead car of the caravan turn abruptly left, drive across the westbound traffic lanes, and the Valiant car crashed headon into the Gretes automobile a fraction of a second later.

During the examination of Hedge, objections were made to numerous questions propounded to him by plaintiffs' counsel with reference to the distances between the several automobiles in the Scout caravan on Route 58. There was some confusion in the prior testimony of other witnesses as to the exact location of the Scout cars when the distances between them were observed. The court ruled that the questions must be directed to the time when the cars were "near or approximately near" the point where the accident occurred. All questions and answers not so confined were struck from the evidence

in the presence of the jury. The limitation imposed by the court was thereafter observed.

Mrs. Gretes, her son, Peter, and LaFrage suffered injuries from which they died. The infant plaintiff, Elliott, suffered grave and severe permanent injuries. The amount of damages is not in question.

Maroulis asks us to reverse the judgments against him, relying on the following six points:

(1) That Maroulis "could not have reasonably foreseen the intervening negligence" of LaFrage;

(2) That negligence of Maroulis "was not a proximate cause of the injuries and damages sustained by the plaintiffs;"

(3) That Maroulis "cannot be held liable in the absence of evidence that the injuries and damages complained of were occasioned by any act of such defendant;"

(4) That "the trial court erred in refusing to declare a mistrial because of the misconduct of plaintiff's counsel with respect to evidence which the court had ruled to be incompetent and objectionable;"

(5) That the court erred in granting and refusing instructions; and

(6) That should Maroulis be found liable, liability should also be imposed on the defendant, Silbert.

The alleged errors will be considered in the order named.

## I.

It was the duty of Maroulis to keep a reasonable lookout for the sudden stopping of vehicles ahead of him, to avail himself of such lookout, and to keep a reasonable distance between his automobile and the automobile immediately in front of him.

Virginia Code 1950, § 46.1-213 provides that:

"The driver of a motor vehicle shall not follow another motor vehicle, trailer or semitrailer more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic upon, and conditions of, the highway at the time."

The likelihood of sudden stopping is one of the reasons for requiring an automobile driver to keep a proper lookout, and to maintain a reasonable and prudent distance behind an automobile in front of him. Every driver knows that vehicles may stop suddenly for various reasons or causes. It is not necessary that one should foresee the cause for which a car may stop; but if he is prudent he must recognize the possibility of a sudden stop. Liability ensues when

injury results from a risk or hazard which may be reasonably foreseen, although the precise injury may not be foreseen. *Barnette* v. *Dickens*, 205 Va. 12, 135 S. E. 2d 109. If Maroulis failed in any one of his duties to keep a proper lookout, to have his car under proper control, or to maintain a reasonable and prudent distance behind the car in front of him, then he took the risk of a collision with the car in front, a natural and probable consequence if the leading car suddenly stopped.

The negligence of LaFrage could not have been an intervening cause of the collision between the cars of Maroulis and Mrs. Gretes. The collision between LaFrage and Mrs. Gretes came first; that between Maroulis and Gretes came thereafter. They were two separate collisions, concurrent or successive in point of time.

The prior negligence of a first or original tort-feasor does not relieve a second tort-feasor of liability, if the latter's negligence constitutes, or contributes to, the proximate cause of the injuries and damages inflicted. In determining the liability of either of several persons whose concurrent negligence results in injury, the comparative degrees of negligence are not to be considered, each being liable for the whole even though the other was equally culpable, or contributed in a greater degree to the injury. *Richmond Coca-Cola Bottling Works, Inc.* v. *Andrews*, 173 Va. 240, 250, 251, 3 S. E. 2d 419; *Von Roy* v. *Whitescarver*, 197 Va. 384, 393, 89 S. E. 2d 346; *Norfolk & Portsmouth Belt Line R.R. Co.* v. *Parker*, 152 Va. 484, 504, 147 S. E. 461; 18 Mich. Jur., Torts, § 4, page 479.

In *Hubbard* v. *Murray*, 173 Va. 448, 455, 456, 3 S. E. 2d 397, we said:

" * * * Where a second tort-feasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof. The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident."

The definition of an insulated intervening cause is clearly stated in *Lester* v. *Rose*, 147 W. Va. 575, 130 S. E. 2d 80, 93:

"An intervening cause in order to relieve a person charged with negligence in connection with an injury must be a negligent act, or

omission, which constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury."

The case of *Riddle* v. *Artis*, 246 N. C. 629, 99 S. E. 2d 857, cited by Maroulis, is not in point. In that case, there were two collisions involving three cars; but it was conceded that the second collision was so slight as to cause no damage or injury. The medical evidence showed injury from the first collision only. Nor does *Lane* v. *Hampton, Adm'r*, 197 Va. 46, 87 S. E. 2d 803 have any bearing on the questions here under consideration.

Questions of foreseeability of a risk and proximate cause are ordinarily for the jury, unless reasonable men could not differ as to the result. Here there was ample evidence to support the jury's finding that Maroulis was negligent in not exercising care to avoid a foreseeable hazard.

## II and III.

Defendant's points numbered two and three will be considered together.

Maroulis argues that his negligence cannot be regarded as the proximate cause of the injuries and damages complained of because they would have occurred if he had not struck the Gretes car. It is true that the collision between the cars of LaFrage and Mrs. Gretes could have occurred without any action on the part of Maroulis; but it must be remembered that Maroulis was the cause of the rear end collision with the Gretes car, immediately after the Gretes car had been struck by LaFrage, or concurrently therewith. The concurrent and successive collisions, in combination, were the direct and proximate cause of the injuries and damages complained of. It was impossible to determine in what proportion each contributed, or what damage might have resulted from the acts of each alone.

It is well settled in Virginia that " * * * (W)here separate and independent acts of negligence of two parties are the direct cause of a single injury to a third person and it is impossible to determine in what proportion each contributed to the injury, either or both are responsible for the whole injury." *Murray* v. *Smithson*, 187 Va. 759, 764, 48 S. E. 2d 239. *Richmond Coca-Cola Bottling Works, Inc.* v. *Andrews, supra*, 173 Va.; *Von Roy* v. *Whitescarver, supra*, 197 Va.; 38 Am. Jur., Negligence, § 257, page 946.

The evidence of the plaintiffs leaves no doubt as to how and why

the Maroulis car struck the Gretes car, nor any doubt that the force of the impact contributed to the injuries sustained by the occupants of the Gretes car.

## IV.

Maroulis next argues that a mistrial should have been granted on the ground that counsel for the plaintiffs below, during examination of the witness, Hedge, attempted to introduce, and did introduce, testimony with respect to the distances between the cars of Silbert and Maroulis which the court had several times ruled as inadmissible. He says that as a consequence, he was forced to object so frequently that his case was prejudiced. It is not surprising that questions were asked as to the distance between the cars in the Scout caravan, especially the cars of Maroulis and Silbert, as they traveled on Route 58. Several witnesses testified to various distances at various times before the scene of the accident was reached. The court undertook to confine the inquiry to "about the time the accident happened." It plainly told the jury of that limitation. Questions and answers not within the limitation were not allowed in evidence. However, after the motions to reject and the motion for a mistrial, there was considerable testimony admitted, without objection, as to distances between the Boy Scout vehicles before and after they turned into the left inner lane approaching the overpass, at or near the point of impact.

We do not think that the trial judge erred in denying the motion for a mistrial. We agree with him that the jury understood the situation and the rulings, and that Maroulis suffered no prejudice under the circumstances.

## V.

The court granted ten instructions at the request of the five plaintiffs below, and eleven at the request of the defendants. The jury were instructed as to the duty of the operator of a motor vehicle to keep a proper lookout, to have his vehicle under proper control, to travel at a reasonable speed, and follow no closer than is reasonable under existing circumstances. They were also instructed on the burden of proof as to both negligence and proximate cause, on sudden emergency, and all phases of the cases based upon the evidence.

Maroulis complains that Instruction No. 2 made him an insurer under the evidence. The instruction reads as follows:

"The Court instructs the jury that the duty to exercise reasonable care to keep a proper lookout requires not only the physical act of looking with reasonable care but reasonable prudent action to avoid the danger which a proper lookout would disclose. If a person looks and does not see what a reasonably prudent person would have seen under the circumstances in time to take the necessary precautions to avoid danger, he is as guilty of negligence as if he failed to maintain a lookout."

It is conceded that the first sentence is a correct statement. The second sentence clearly refers to the first, and says the same thing in a different way. It deals with the conduct of a man under given circumstances.

The instruction is a proper statement of the law applicable to the peculiar facts of this case. The principles stated have been approved in numerous cases. *Richmond Greyhound Lines, Inc.* v. *Brown,* 203 Va. 950, 953, 128 S. E. 2d 267; *Von Roy* v. *Whitescarver, supra,* 197 Va.; *Matthews* v. *Hicks, Adm'r,* 197 Va. 112, 115, 87 S. E. 2d 629.

Maroulis admitted that he saw the car of Kehayas as it turned to the left across the road; that he "assumed there was trouble ahead;" and did not "really" apply his brakes before the collision between the cars of LaFrage and Mrs. Gretes had occurred. Unlike Silbert, who brought his car under control and avoided striking the Gretes car more than a slight blow, Maroulis went ahead, without turning aside, struck the already stopped Silbert automobile a terrific blow, and then crashed into the back of the Gretes car so hard that his own automobile bounced backward into the Chapel car behind him. These facts presented a question for the jury to determine whether Maroulis acted as a reasonable prudent person when he failed to take necessary precautions to avoid a dangerous situation which he admits was arising before him.

Maroulis further complains that the court erred in refusing to grant Instruction No. H. The instruction was confusing. It precluded any separation of negligence, or of proximate cause, as to Silbert and Maroulis. The prior negligence of LaFrage in causing the first collision could not have been, as we have heretofore stated, an intervening cause. The question of proximate cause was fully covered in other instructions given at the request of defendants.

## VI.

■ Finally, Maroulis contends that should he be held liable, Silbert should likewise be held, citing *Lavenstein* v. *Maile*, 146 Va. 789, 132 S. E. 844 and *Richmond Coca-Cola Bottling Works, Inc.* v. *Andrews, supra,* 173 Va.

The facts in the cases under consideration clearly differ from those in the above two cited cases. Neither affords Maroulis any support for his contention.

There was ample evidence to support the jury's finding that Silbert was not guilty of any negligence. *Baxley* v. *Fischer*, 204 Va. 792, 134 S. E. 2d 291.

For the reasons stated, the defendants below had a fair and impartial trial. All issues were fairly submitted to the jury, and the verdict of the jury is binding upon this Court. In each of the consolidated cases, the judgment is affirmed.

*Affirmed.*