Present:  All the Justices

STUART W. POLLINS, ADMINISTRATOR OF THE
ESTATE OF NICHOLAS VACCARO-POLLINS, DECEASED

v.    Record No. 010425        OPINION BY JUSTICE ELIZABETH B. LACY
                                        January 11, 2002
RAYMOND JONES, M.D.

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

In this appeal from a judgment in favor of the defendant doctor in a wrongful death case, we consider whether the evidence presented supported a jury instruction which told the jury to enter judgment in favor of the doctor if it found that the doctor chose one of "two or more alternative courses of action . . . recognized by the profession as proper."

Nicholas Vaccaro-Pollins (Nicholas) was born on October 20, 1993 with trisomy 21 (Down's Syndrome) and a congenital ventricular septal defect.[1]  On April 4, 1995, Nicholas underwent surgery to repair the defect in his heart at the Medical College of Virginia Hospitals (MCV Hospital).  Nicholas experienced post-operative complications, including two different episodes of pericardial effusion, a condition in which excessive fluid collects around the heart.  These effusions were drained on April 7 and 14 while Nicholas was still in the care of MCV Hospital.  Nicholas was discharged from MCV Hospital in stable

condition on April 17 with instructions that he be given one baby aspirin every six hours and 5 mg. of Lasix twice daily.[2]

On April 21, Nicholas began vomiting and suffering from diarrhea and a low-grade fever. Nicholas' mother, Donna Vaccaro-Pollins, took Nicholas to see Raymond Jones, M.D., Nicholas' pediatrician. Dr. Jones was aware of Nicholas' prior surgery and post-operative pericardial effusions. Dr. Jones gave Nicholas a physical examination that included listening to and palpitating his heart and liver, and concluded that Nicholas had gastritis. He prescribed Phenergan, an anti-emetic drug. He also instructed Mrs. Vaccaro-Pollins not to give Nicholas his evening dose of Lasix or aspirin and recommended that she contact Nicholas' doctors at MCV Hospital to report his current problems.

In the early hours of April 22, 1995, Nicholas went into cardiac arrest and, after attempts to revive him failed, he was pronounced dead at 5:38 a.m. The autopsy of Nicholas' body revealed that his pericardium contained 170 cc. of fluid, evidence that Nicholas died from congestive heart failure resulting from cardiac tamponade, a condition where excessive

---

[1] A ventricular septal defect is a condition in which there is a connecting hole between the lower two chambers of the heart.

[2] Lasix is a diuretic used to flush excess fluid from the body and is commonly prescribed after heart surgery.

pressure is placed on the heart as a result of fluid in the pericardium.

Stuart W. Pollins, Nicholas' father and the administrator of his estate (the Administrator) brought this wrongful death action against Dr. Jones.[3] The Administrator presented three expert witnesses, who testified regarding the standard of care for treating a patient presenting Nicholas' symptoms and that Dr. Jones breached that standard of care. Dr. Jones also offered the testimony of three expert witnesses who testified that Dr. Jones' actions did not constitute a breach of the standard of care of a physician presented with a patient in Nicholas' condition.

Over the Administrator's multiple and strenuous objections, the trial court granted Dr. Jones' request that Instruction R be given to the jury. The instruction stated:

> You have heard from the expert witnesses who have testified in this case with different views as to what would be the proper procedures to be followed by a physician in the position of Dr. Jones. If you find from this testimony that two or more alternative courses of action would be recognized by the profession as proper, and that Dr. Jones in the exercise of his best judgment elected one of these proper alternatives, you should find for Dr. Jones.

The jury returned a verdict in favor of Dr. Jones and the trial court entered judgment in accordance with the jury verdict.

On appeal, the Administrator seeks reversal of the judgment on the ground that Instruction R was improperly given because there is no evidence to support such an instruction.

The applicable principles are well settled. A jury instruction may be given only if there is evidence to support the instruction. Van Buren v. Simmons, 235 Va. 46, 51, 365 S.E.2d 746, 749 (1988). Use of the instruction at issue in this case requires evidence from expert testimony supporting the propositions that (1) there were "two or more alternative courses of action," and (2) that "the profession recognized [such alternative courses of action] as proper."

In objecting to this instruction, the Administrator argued that, while the experts disagreed on whether or not Dr. Jones violated the standard of care, there was no evidence presented that the standard of care involved two or more alternative courses of action recognized by the profession. We agree with the Administrator.

The record shows that the expert witnesses agreed that the standard of care was "the degree of skill and diligence in the care and treatment of his patients that a reasonably prudent doctor in the same field of practice or specialty in this state would have used under the circumstances of this case." The jury

[3] MCV Hospital, Dr. Richard Schieken, and Dr. Richard Embrey were also named as defendants, but were dismissed from the case

was instructed on this standard of care in Instruction 12. The Administrator's expert witnesses opined that Dr. Jones violated the standard of care by failing to obtain Nicholas' medical history from MCV Hospital and instead instructing Nicholas' mother to contact the treating physicians at MCV Hospital; by conducting a heart examination of a struggling, crying child by percussion; by failing to determine a change in heart size through an x-ray; by terminating the Lasix medication and prescribing Phenergan to a child less than two years of age; and by failing to include pericardial effusion or congestive heart failure in his diagnosis.

Dr. Jones' expert witnesses opined that Dr. Jones did not violate the applicable standard of care because (1) an x-ray or echocardiogram was not required under the circumstances; (2) instructing the mother to contact the child's physicians at MCV Hospital was sufficient and those physicians could have contacted Dr. Jones if they "had any other questions;" (3) the child's past and current medical history and the physical examination supported a diagnosis of gastritis; and (4) terminating the Lasix medication and prescribing Phenergan to stem the vomiting was reasonable.

All of this testimony addressed whether Dr. Jones' actions complied with the applicable standard of care. The expert

following a settlement.

witnesses did not agree that professionally accepted alternative procedures under the circumstances allowed Dr. Jones to order an x-ray or conduct only a percussive physical examination; the experts did not agree that Dr. Jones could either contact Nicholas' treating physicians or have Nicholas' mother contact those physicians; the experts did not agree that the Lasix medication could either have been terminated or continued under the circumstances, nor did they agree that Phenergan could either be prescribed or not be prescribed for a child of Nicholas' age; and, finally, the experts did not agree that reaching a diagnosis of either gastritis or pericardial effusion would comply with the applicable standard of care. There was absolutely no expert testimony or other evidence that "two or more alternative courses of action were available" and "would be recognized by the profession as proper" in the course of the diagnosis and treatment of Nicholas on April 21, 1995.

King v. Sowers, 252 Va. 71, 471 S.E.2d 481 (1996), relied upon by Dr. Jones, does not require a different result. In King, the instruction at issue referenced a "difference in views [among] practitioners as to treatment, or as to medical judgment exercised." Id. at 77, 471 S.E.2d at 485 (internal quotations omitted). The Court in King found that the evidence did establish a "difference in views" among the experts and thus supported the instruction, even though the instruction itself

6

was an incorrect statement of the law.[4]  Id.  In the instant case, Instruction R would only have been proper if there was evidence to support a finding that alternative procedures "would be recognized by the profession as proper."  As discussed above, the evidence in this case failed to show that the experts "recognized" or agreed that alternative procedures were proper.

For the above reasons we hold that the trial court erred in granting Instruction R.  Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial.

Reversed and remanded.

---

[4] In King, the Court stated that the instruction was an incorrect statement of the law, but no objection to the content of the instruction had been raised in the trial court.  King v. Sowers, 252 Va. at 76-77, 471 S.E.2d at 484.  As in King, the Administrator in this case did not challenge Jury Instruction R on the basis of its legal content.