PRESENT:  All the Justices

WILLIAM C. SULLIVAN, D.O.

v. Record No. 060647     OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         January 12, 2007
ROBERTSON DRUG CO., INC., ET AL.


           FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    J. Leyburn Mosby, Jr., Judge


     This case is an appeal of a judgment entered in a

contribution action involving joint tortfeasors.  We consider

whether the circuit court erred in instructing the jury that it

could apportion damages based on the jury's assessment of the

degree to which a defendant's negligence contributed to the

injuries that were the subject of the underlying tort action.

We also consider whether the circuit court erred in instructing

the jury that it could consider the reasonableness of the

settlement reached in the underlying tort action.

     In 1997, David M. Hopper filed a complaint in the United

States District Court for the Western District of Virginia

against his physician, William C. Sullivan, D.O., alleging that

Dr. Sullivan improperly prescribed excess amounts of

Triamcinolone, a corticosteroid.  Hopper alleged that his use of

those excessive amounts of Triamcinolone caused him to develop

severe medical conditions including Cushing's Syndrome[1] and osteoporosis. Hopper further alleged that Dr. Sullivan failed to monitor Hopper's use of Triamcinolone, improperly administered an injection of testosterone, and subjected Hopper, a known recovering narcotics abuser, to a "foreseeable dangerous home regime of self-administered drugs."

In his complaint, Hopper additionally alleged that Dr. Sullivan had written Hopper prescriptions for Cortisone, Prednisone, and other corticosteroids and medications, and that Dr. Sullivan had "disavowed to other health care providers knowledge" of Hopper's drug regimen. Hopper sought $1 million in compensatory damages and $350,000 in punitive damages from Dr. Sullivan. Hopper and Dr. Sullivan later entered into an agreement settling the federal court action for the amount of $735,000. In the agreement, Hopper released all claims he may have had against Dr. Sullivan and against Robertson Drug and its employees.

After the settlement, Dr. Sullivan filed the present motion for judgment against Michael S. Robertson, a pharmacist, and Robertson's employer, Robertson Drug Co., Inc. (Robertson Drug),

---

[1] Cushing's Syndrome is a condition caused by excessive cortisone in the body. The symptoms may include a rapid increase in fat cells in the face, neck, and trunk, curvature of the back caused by osteoporosis of the spine, hypertension, diabetes, pain in the abdomen and back, and muscular wasting and weakness. Richard Sloane, The Sloane-Dorland Annotated Medical-Legal Dictionary 690 (1987).

seeking contribution for Dr. Sullivan's payment in settlement of Hopper's claim. In the contribution action, Dr. Sullivan alleged that Robertson, in his individual capacity and as owner of Robertson Drug, negligently "refilled" Hopper's Triamcinolone prescriptions, thereby contributing to Hopper's injuries.

Dr. Sullivan further alleged that because Hopper could have pursued an action for damages against Robertson and Robertson Drug, Dr. Sullivan was authorized under Code §§ 8.01-34 and -35.1 to pursue the contribution action. Thus, Dr. Sullivan asserted that Robertson and Robertson Drug were indebted to Dr. Sullivan for "their share of the total settlement paid by Sullivan for their release." In their grounds of defense, Robertson and Robertson Drug denied that they caused any injury to Hopper or were joint tortfeasors with Dr. Sullivan.

At trial, the evidence showed that Hopper initially sought medical treatment from Dr. Sullivan for multiple injuries he sustained in an automobile accident. In June 1993, Dr. Sullivan provided Hopper with his first dose of Triamcinolone for "pain management." Hopper reported that his headaches were less severe after the injection. Thereafter, Dr. Sullivan gave Hopper two or three additional Triamcinolone injections between August and September of 1993.

Dr. Sullivan also wrote Hopper a prescription for Triamcinolone. Instead of writing "0" as the number of refills

3

permitted, Dr. Sullivan circled "PRN," which allowed Hopper to receive unlimited "refills" for 24 months.  According to Dr. Sullivan, he did not intend to allow unlimited "refills" of the drug because its long-term use can cause suppression of the immune system, bone deterioration, diabetes, and weight gain. Dr. Sullivan admitted that he acted negligently in prescribing Triamcinolone to Hopper.

From June 1993 through July 1993, based on the prescription written by Dr. Sullivan, Hopper obtained Triamcinolone on five occasions from Westover Pharmacy.  After Westover Pharmacy permanently closed its business at the end of July 1993, Hopper obtained "refills" of his prescription at Robertson Drug three times between early August 1993 and the middle of September 1993.  Robertson was the pharmacist who provided these last three "refills" and, at that time, he had access to Westover Pharmacy's prescription records.

The jury heard conflicting testimony on the issue whether Robertson's conduct constituted a breach of the standard of care applicable to pharmacists.  Edgar R. Gonzales, who qualified as an expert in pharmacology, testified that because of the drug's serious long-term effects, Robertson breached the standard of care for pharmacists by supplying the additional Triamcinolone without contacting Dr. Sullivan.  In contrast, Timothy W. Lucas, who also qualified as an expert in pharmacology, testified that

4

Robertson did not breach the standard of care for pharmacists by failing to contact Dr. Sullivan before "refilling" Hopper's prescription.

The evidence further revealed that in the middle of September 1993, Hopper became ill, was admitted to a hospital for 20 days, and was diagnosed as having Cushing's Syndrome. In 1995, Dr. Eugene J. Barrett began treating Hopper for Cushing's Syndrome, osteoporosis, and several other related problems, including a compression back fracture, a rib fracture, and a risk of spinal collapse. Dr. Barrett attributed these conditions to Hopper's overuse of corticosteroids.

Dr. Barrett could not identify any specific condition as being caused solely by a particular steroid prescribed by Dr. Sullivan. However, Dr. Barrett concluded that Hopper's use of Triamcinolone was the dominant, contributing factor in his development of Cushing's Syndrome and osteoporosis, and that each injection of that drug had a cumulative effect.

At the close of Dr. Sullivan's evidence, Robertson and Robertson Drug (collectively, Robertson) moved to strike the evidence, arguing that Dr. Sullivan was required to apportion the damages and quantify Robertson's share of the injury because Dr. Sullivan was responsible for a "big measure" of Hopper's injury, while Robertson was only responsible for a "very small area" of damages. Robertson argued that Dr. Sullivan's

settlement did not reflect such an apportionment, and further noted that neither Dr. Barrett nor Gonzales was able to apportion the amount of damage attributable to the actions of either Dr. Sullivan or Robertson.  The circuit court denied Robertson's motion, stating that the jury should decide what damages, if any, Robertson caused.

At the close of all the evidence, Dr. Sullivan argued that he was entitled to judgment as a matter of law on the issue of reasonableness of the settlement, arguing that Robertson had failed to present any evidence to rebut the presumption that the settlement was reasonable.  The circuit court denied Dr. Sullivan's request.

Over Dr. Sullivan's objections, the circuit court gave the following jury instructions:

Instruction A:

The Court instructs the jury that where there is damage from several causes, for a portion of which the defendants cannot be held liable, a plaintiff must present evidence that will show within a reasonable degree of certainty the share of the damages for which the defendants are responsible.  If the plaintiff fails to do so, then he cannot recover for that item.

Instruction O:

The Court instructs the jury that on the issue of damages if you find [both Robertson and Robertson's Drug were] negligent, and their negligence was a proximate cause of David Hopper's injuries, which were the basis of his lawsuit and settlement with Dr. Sullivan, then you shall determine how much of the amount of that settlement is

related to negligence of [the] Robertson[s] and apportion that amongst all the wrongdoers on a pro-rata basis.

Instruction 13:

The Court instructs the jury that there is a presumption that the $735,000.00 settlement made by Dr. Sullivan is reasonable, that the defendants are not bound by the compromise settlement since they were not a party to the settlement, and that the burden of proof is upon the defendants to prove that compromise settlement was unreasonable and excessive.

The jury returned a verdict in favor of Dr. Sullivan, awarding him damages in the amount of $73,500. Dr. Sullivan made a motion to set aside the verdict, arguing that because the jury decided that Dr. Sullivan and Robertson were joint tortfeasors, Robertson was required to pay half the $735,000 settlement. The circuit court denied the motion and entered final judgment in accordance with the jury verdict. Dr. Sullivan appeals.

Dr. Sullivan argues that the circuit court erred in giving Jury Instructions A and O, which permitted the jury to apportion the amount of damages based on the jury's assessment of Robertson's degree of negligence in causing Hopper's injury. Dr. Sullivan maintains that Hopper's injuries were not susceptible to apportionment because the evidence showed that his injuries were indivisible. Thus, Dr. Sullivan contends that Robertson was a joint tortfeasor who was equally liable for half the damages caused by his concurrent negligence and that the

7

circuit court should have instructed the jury that if it returned a verdict in Dr. Sullivan's favor, the jury must award him $367,500.

In response, Robertson argues that Jury Instructions A and O were correct based on the evidence presented. Robertson asserts that the evidence showed that Hopper suffered multiple divisible injuries, some of which were caused solely by Dr. Sullivan. Robertson contends that, therefore, the jury was properly instructed that Dr. Sullivan could recover only for injuries proximately caused by the concurrent negligence of Robertson and Dr. Sullivan, and that the jury was required to determine what portion of the $735,000 settlement was attributable to that concurrent negligence. We disagree with Robertson's arguments.

The right of contribution is based on the equitable principle that when two or more persons are subject to a common burden, their responsibility shall be borne equally. Nationwide Mut. Ins. Co. v. Minnifield, 213 Va. 797, 800, 196 S.E.2d 75, 77-78 (1973); Nationwide Mut. Ins. Co. v. Jewel Tea Co., 202 Va. 527, 531-32, 118 S.E.2d 646, 649 (1961); Wiley N. Jackson Co. v. City of Norfolk, 197 Va. 62, 66, 87 S.E.2d 781, 784 (1955). A right of contribution against a joint tortfeasor lies when one wrongdoer has paid or settled a claim not involving moral turpitude for which other wrongdoers also are liable.

8

_Minnifield_, 213 Va. at 798, 196 S.E.2d at 76; _Bartlett v. Roberts Recapping, Inc._, 207 Va. 789, 793, 153 S.E.2d 193, 196 (1967); _Jewel Tea_, 202 Va. at 532, 118 S.E.2d at 649; see Code § 8.01-34.  The party seeking contribution has the burden of proving that the concurring negligence of the other parties was a proximate cause of the injury for which damages were paid. _Jewel Tea_, 202 Va. at 531, 118 S.E.2d at 649.

When a contribution action is based on a settlement agreement reached between an injured person and one tortfeasor, the remaining tortfeasors may defend against the contribution action on various grounds.  Such defenses, which are subject to adjudication in a contribution action, include that the settling tortfeasor was not negligent, that the remaining tortfeasors were not concurrently negligent with the settling tortfeasor, that the remaining tortfeasors' negligence was not a proximate cause of the damages compromised, or that the settlement agreement was unreasonable, excessive, or made in bad faith. _Id._

If separate and independent acts of negligence of two parties directly cause a single indivisible injury to a third person, either or both wrongdoers are responsible for the whole injury.  _Maroulis v. Elliott_, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966); _Murray v. Smithson_, 187 Va. 759, 764, 48 S.E.2d 239, 241 (1948).  Thus, in determining the liability of a person

9

whose concurrent negligence results in such an injury, comparative degrees of negligence shall not be considered and both wrongdoers are equally liable irrespective whether one may have contributed in a greater degree to the injury. Maroulis, 207 Va. at 510, 151 S.E.2d at 344; Von Roy v. Whitescarver, 197 Va. 384, 393, 89 S.E.2d 346, 352 (1955); Murray, 187 Va. at 764, 48 S.E.2d at 241; Richmond Coca-Cola Bottling Works, Inc. v. Andrews, 173 Va. 240, 250-51, 3 S.E.2d 419, 423 (1939).

Accordingly, each such wrongdoer is responsible for an equal share of the amount paid in damages for a single injury. Only when there are multiple, divisible injuries covered by a compromise settlement is the finder of fact required to attempt an allocation of the amount in contribution a wrongdoer must pay for his negligent act or acts causing one or more of those divisible injuries. See Tazewell Oil Co. v. United Virginia Bank, 243 Va. 94, 115, 413 S.E.2d 611, 622 (1992).

In the present case, Dr. Barrett testified that the effect of the Triamcinolone was cumulative and, therefore, it was impossible to determine what effect any particular dose had on Hopper. According to Dr. Barrett, Hopper's use of Triamcinolone was the dominant contributing factor in Hopper's development of Cushing's syndrome and osteoporosis. Dr. Barrett also stated that several of Hopper's other conditions, including sepsis, pneumonia, and empyema, were caused by the immunosuppressive

10

effect of the Triamcinolone.  Dr. Barrett further explained that Hopper received other corticosteroids, and stated that this entire group of drugs, including the Triamcinolone, "all cause the same issues when given in high doses and given repeatedly."

By this medical testimony, which was not refuted, Dr. Sullivan established that the cumulative effect of the doses of Triamcinolone given to Hopper caused him an indivisible injury. Thus, if Robertson's actions breached the standard of care, Robertson was liable for the whole injury to Hopper, irrespective whether doses of that drug not supplied by Robertson, or whether other drugs, contributed in a greater degree to Hopper's injury.  See Maroulis, 207 Va. at 510, 151 S.E.2d at 344; Von Roy, 197 Va. at 393, 89 S.E.2d at 352; Murray, 187 Va. at 764, 48 S.E.2d at 241; Richmond Coca-Cola Bottling Works, 173 Va. at 250-51, 3 S.E.2d at 423.

Viewed in this context, Instruction A was erroneous because it improperly suggested that Robertson could not be found liable for the whole, indivisible injury caused by the various doses of Triamcinolone and other medications supplied to Hopper from different sources.  This instruction further was improper because Robertson failed to present any evidence that Hopper suffered injuries separate and divisible from those resulting from his use of Triamcinolone.  Hopper's various allegations in the underlying tort action that he suffered injury resulting

11

from medications other than Triamcinolone plainly were not evidence in the present action that Hopper had sustained a divisible injury. Thus, the record before us lacked evidence of a separate, divisible injury for which Robertson was not liable.

We also conclude that the circuit court erred in giving Instruction O. This instruction was erroneous because it directed the jury to apportion damages based on the joint tortfeasors' relative degrees of negligence. By improperly directing the jury to compare the negligence of the wrongdoers, Instruction O violated the established principle that comparative degrees of negligence are not to be considered in determining the liability of persons whose concurrent negligence results in an injury. Maroulis, 207 Va. at 510, 151 S.E.2d at 344; Murray, 187 Va. at 764, 48 S.E.2d at 241.

We next consider Dr. Sullivan's argument that the circuit court erred in allowing the jury to consider the issue whether the settlement between Dr. Sullivan and Hopper was reasonable. Dr. Sullivan contends that although Instruction 13 was a correct statement of law, Robertson presented no evidence to rebut the presumption that the settlement was reasonable and, thus, the circuit court should not have given that instruction.

In response, Robertson argues that the circuit court did not err in allowing the jury to consider the reasonableness of the settlement. Robertson contends that although the settlement

12

may have been reasonable with regard to Dr. Sullivan and Hopper's several claims against Dr. Sullivan, the settlement was unreasonable with regard to Robertson because it included claims, injuries, and damages that were not the product of the concurrent negligence of Dr. Sullivan and Robertson. We find no merit in Robertson's arguments.

When a tortfeasor enters into a settlement agreement with a claimant that also releases other tortfeasors, the settling tortfeasor is entitled to obtain contribution from the remaining tortfeasors for reasonable amounts paid to settle the claim. Code § 8.01-35.1. Under this statute, a fact finder may consider the reasonableness of the settlement agreement only with regard to the indivisible injury sustained and may not consider, as part of the reasonableness analysis, whether the remaining tortfeasors caused the injuries that were not the basis for the settlement. Robertson's argument addressing the reasonableness of the settlement is unpersuasive because it confuses these two concepts.

The terms of settlement of a claim constitute prima facie evidence of reasonableness, and a defendant in a contribution action bears the burden of producing evidence that the compromise reached was unreasonable or excessive. See Jewel Tea, 202 Va. at 531, 118 S.E.2d at 648-49. Thus, Robertson, as the defendant in the contribution action, had the burden of

13

producing evidence that the settlement was unreasonable before he was entitled to Instruction 13 submitting that issue for the jury's determination.

Robertson, however, failed to present any evidence indicating that the settlement was unreasonable or excessive.[2] Therefore, having failed to produce more than a scintilla of evidence on the subject, Robertson was not entitled to have the jury instructed on the issue of reasonableness of the settlement. Monahan v. Obici Med. Mgmt. Servs., 271 Va. 621, 636, 628 S.E.2d 330, 339 (2006); Schlimmer v. Poverty Hunt Club, 268 Va. 74, 78, 597 S.E.2d 43, 45 (2004); Pollins v. Jones, 263 Va. 25, 28, 557 S.E.2d 713, 714 (2002). Accordingly, we conclude that the circuit court erred in giving Instruction 13 and in submitting that issue for the jury's consideration.

Our holding that the circuit court improperly instructed the jury requires us to reverse the circuit court's judgment. Because the circuit court's improper instructions addressed issues of liability as well as issues of damages, those instructions may have exerted a material influence on the jury in reaching its conclusions on both issues. Therefore, a new

---

[2] Likewise, Robertson failed to present any evidence that the settlement agreement included compensation for injuries involving willful and wanton acts of negligence or moral turpitude or compensation for punitive damages. Therefore, we do not address further his argument that these alleged factors were reflected in the settlement.

14

trial on all issues is appropriate.  See Wright v. Estep, 194

Va. 332, 337-38, 73 S.E.2d 371, 375 (1952); Rawle v. McIlhenny,

163 Va. 735, 750, 177 S.E.2d 214, 221 (1934).

For these reasons, we will reverse the circuit court's

judgment and remand the case for a new trial on all issues.

Reversed and remanded.